**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Plaintiff–Appellee,

v.

**STATE BANK OF VIRDEN,**
Defendant–Appellant.

No. 89–1334.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1989.

Decided Jan. 11, 1990.

Order on Denial of Rehearing Mar. 5, 1990.

**140**

ington, D.C., Cheryl Ragel Stickel, Mohan, Aleweit & Prillaman, Springfield, Ill., for plaintiff-appellee.

Donald R. Tracy (argued), Tracy & Tracy, Springfield, Ill., for defendant-appellant.

Before EASTERBROOK and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Banks may not lend to any customer more than a small portion of their net equity. Lending limits reduce the risk a given loan poses to solvency. Small banks often have limits that prevent their making loans adequate to the needs of their principal customers. One solution is the "loan participation": a bank makes an over-limit loan, then syndicates the debt, selling parts so that no bank's share exceeds the amount it may loan to one customer. For years the State Bank of Farmersville and the State Bank of Virden, two banks in rural Illinois, accommodated each other in this fashion. Farmersville failed in 1985, and Virden wants to use a debt on account of one participation as a defense to efforts to collect on another.

In 1983 Farmersville bought $61,000 of participations in loans Virden made to Roy and Norma Rakes. In 1984 Virden bought a $120,000 participation in a loan Farmersville made to Atwater Grain Company. Each agreement obliged the original lender to collect from its debtor and remit to the participating bank. Atwater collapsed in February 1985. Three months later, on May 3, Virden unilaterally "cancelled" its participation in the Atwater loan, contending that Farmersville had lied about material facts when Virden bought the participation and had kept silent about other important facts. Virden treated this rescission as requiring Farmersville immediately to return the $120,000 Virden paid for the participation; Farmersville treated it as a nullity, informing Virden by letter of May 10 that it viewed the participation as proper and outstanding.

On June 25, 1985, the Rakes paid Virden the outstanding balance on their loans. Instead of remitting the money to Farmers-

Hoyle L. Robinson, E. Whitney Drake (argued), Federal Deposit Ins. Corp., Wash-

ville, Virden sent a letter asserting a right of setoff against the debt of $120,000 that Virden believed was due on the rescission of the Atwater Grain participation. Farmersville did not reply to this letter. It was *in extremis*. On August 9, 1985, state officials closed Farmersville; the Federal Deposit Insurance Corporation agreed to act as its receiver. With the approval of a state court, the FDIC in its corporate capacity paid itself as receiver about $4 million from its insurance fund. FDIC–Receiver immediately sold the cash and Farmersville's performing loans to Litchfield Bank & Trust, which took over Farmersville's obligations to its depositors. In exchange for the insurance proceeds, FDIC–Corporate obtained Farmersville's non-performing assets, which Litchfield was unwilling to purchase. This standard purchase and assumption (P & A) transaction gave liquidity to Farmersville's depositors, who did not have to wait for its assets to be sold piecemeal before receiving a combination of distributions from the estate and insurance funds from the FDIC. Litchfield got an even trade, taking Farmersville's good loans and the FDIC's cash in exchange for the obligations to Farmersville's depositors. Creditors of Farmersville *other* than depositors were left looking to the bank's remaining estate, held by FDIC–Receiver. But FDIC–Receiver has no assets, having distributed all to Litchfield and FDIC–Corporate. Although Virden has filed suit in state court seeking from FDIC–Receiver the $120,000 it claims Farmersville owed it, Virden's best chance to salvage something from the wreckage comes in this suit, in which FDIC–Corporate seeks payment on the Rakes participation.

■ The district court granted summary judgment in favor of FDIC–Corporate, directing Virden to pay $64,354 plus interest. Virden's principal argument on appeal is that the suit does not come within federal jurisdiction. FDIC invokes 12 U.S.C. § 1819 Fourth (1988), which provides in part:

> All suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof ... except that any

such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

Farmersville was a state bank, so if the FDIC "is a party in its capacity as a receiver" and the case involves the rights of the bank "under State law", there is no federal jurisdiction. Because the FDIC participates in P & A transactions as both insurer and receiver, questions about its "capacity" and the source of the governing law dog litigation of this kind. See *FDIC v. Elefant*, 790 F.2d 661 (7th Cir.1986).

Once the FDIC sells an instrument to itself as insurer—something 12 U.S.C. § 1823(c)(2)(A)(i) expressly authorizes—it no longer acts as receiver. For that matter, the suit on the instrument is not one "under State law", given the holding of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942), that demands for payment of debts due a failed bank must be adjudicated under federal common law. So the books are full of cases holding that the FDIC's attempts to collect belong in federal court. See, e.g., *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 367 (7th Cir.1979); *FDIC v. Ashley*, 585 F.2d 157, 161–62 (6th Cir. 1978), not to mention *D'Oench* itself.

Virden maintains that things are not so simple after *FDIC v. Braemoor Associates*, 686 F.2d 550 (7th Cir.1982), which said that FDIC–Receiver cannot create federal jurisdiction, in a case that otherwise involves only state law, by claiming to act as FDIC–Corporate. If FDIC–Corporate pays value for the claim, *Braemoor* concluded, 686 F.2d at 553, the litigation no longer involves the FDIC solely "in its capacity as a receiver of a State bank". As Virden sees things, FDIC–Corporate did not give consideration for the Rakes participation. True, it shelled out $4 million, but it must have owed at least this much to Farmersville's depositors. Payments to satisfy existing obligations are not fresh consideration, so Virden reasons that the FDIC continues to hold the participation in its capacity as receiver.

This misunderstands both *Braemoor* and the statute. The FDIC's "capacity" matters because the statute draws a line between litigation by FDIC as "Corporation" and litigation involving only the administration of the estate. Once the FDIC transfers an asset to its corporate side, the suit to collect no longer affects the estate. FDIC will keep the money (reducing the net distribution from the insurance fund), not apportion it among creditors. State law does not apply, according to *D'Oench.* Things get sticky when, as in *Braemoor,* the receiver transfers not an asset of the failed bank but its own chose in action. Suits by the receiver under state law belong in state court; if the stroke of a pen could transfer them to federal court, the exception to § 1819 Fourth would be hollow. So *Braemoor* held that when the receiver transfers a chose in action, payment from the insurance fund governs the question "In which capacity is FDIC suing?". Participation agreements are the sorts of assets customarily transferred to FDIC–Corporate as part of a P & A transaction; FDIC–Corporate gave value in the process. Whether this amounted to fresh "consideration" as opposed to satisfaction of an existing obligation would be an interesting question under the common law of contracts, but it is not the right question under § 1819 Fourth. This suit belongs in federal court under § 1819 Fourth as it stood at the time. It is accordingly unnecessary for us to decide whether the enlargement of that statute's jurisdictional grant by § 209 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 216, applies to litigation pending at the time of its enactment. Cf. *Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205, 207 (5th Cir.1989).

All questions concerning the Atwater Grain participation to one side, Virden concededly owed Farmersville more than $60,000 on the Rakes participations. Virden's only defense to collection is setoff. Federal law governs the effect of the setoff, see *D'Oench,* but in most respects federal common law incorporates state law, *Braemoor,* 686 F.2d at 553–54; see also *United States v. Kimbell Foods Corp.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). FDIC–Receiver succeeded to the interests Farmersville possessed under state law, and it transferred to FDIC–Corporate only what

it had. If Virden had paid Farmersville the money it received from the Rakes, FDIC–Corporate could not collect a second time and remit Virden to a suit against FDIC–Receiver to recover its payment. See *Commerce Federal Savings Bank v. FDIC,* 872 F.2d 1240 (6th Cir.1989); *Grubb v. FDIC,* 868 F.2d 1151, 1158–59 (10th Cir.1989). Payment blocks recovery. Under state law, setoff has the same effect as payment, extinguishing the debt. *Kamfner v. Auburn Park Trust & Savings Bank,* 344 Ill. 200, 176 N.E. 363 (1931); *Olsen v. Valley National Bank,* 91 Ill.App.2d 365, 234 N.E.2d 547 (2d Dist.1968). Federal common law treats setoffs the same way. *Cumberland Glass Co. v. DeWitt,* 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); *Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913); *Scott v. Armstrong,* 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892). Virden asserted a setoff before FDIC–Receiver stepped into Farmersville's shoes. Therefore, it concludes, FDIC–Receiver did not obtain an asset it could transfer to FDIC–Corporate. Virden concedes that this chain works only if the setoff was valid, which (on its view) depends on whether it was indeed the victim of cozening, so if we were to go this far with Virden we would have to remand to let the district court decide whether Virden properly rescinded the Atwater Grain participation.

The FDIC could escape this conclusion if it were a holder in due course, but the loan participation is not itself a negotiable instrument, even though the underlying note may have been. The FDIC also could escape if the debts were not "mutual". *Boston & Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562 (7th Cir.1986); *Stuart v. Lott,* 304 Ill. 170, 136 N.E. 454 (1922); *First National Bank of Deerfield v. Lewis,* 186 Ill.App.3d 16, 19, 134 Ill.Dec. 124, 126, 542 N.E.2d 124, 126 (1st Dist.1989). Thus a setoff asserted after the bank has failed may not cancel a prior debt. *Dakin v. Bayly,* 290 U.S. 143, 148–49, 54 S.Ct. 113, 115–16, 78 L.Ed. 229 (1933). Applied to banking law, this principle means that the failed bank's creditor must seek relief from the estate rather than FDIC–Corporate in the event of a setoff after the bank's closure. E.g., *Hibernia National Bank v. FDIC,* 733 F.2d 1403 (10th Cir. 1984). If the cancellation of the Atwater Grain participation is any kind of setoff,

however, it took place before the P & A transaction. FDIC–Corporate acquired the Rakes participation as reduced by the antecedent recoupment—if (as we keep repeating) it was reduced at all. To that question we must turn.

The FDIC argues that because of 12 U.S.C. § 1823(e), setoffs *never* may reduce FDIC–Corporate's recovery. Before its amendment by FIRREA this law provided:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it ... shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank ... contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The new statute extends the coverage of this rule to FDIC–Receiver but does not change its substance, which gives statutory backing to the holding of *D'Oench* that oral side agreements do not bind the FDIC. Bank regulators and insurers must be able to rely on the bank's books, both to determine whether it is solvent in the first place and to value its assets at the time of a P & A if it fails. Collateral agreements—such as the bank's promise in *D'Oench* not to collect the note—may be enforced against the persons who made them, but not against the FDIC. See also *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The FDIC submits that every setoff is an unrecorded "agreement" not to collect and therefore is unenforceable.

■ As a lexical matter, it is hard to think of setoff as an "agreement" of any kind. Virden does not dispute that the Rakes participation means what it says and is valid. It contends, rather, that it has satisfied its obligations under the Rakes participation—by setoff rather than by tendering a check, but satisfied them nonetheless. If Virden had paid the obligation in full, the FDIC could not say that it was hiding behind an unwritten "agreement to

accept payment". Setoffs are honored by virtue of trade custom and common law; rules of law recognizing particular ways to satisfy a debt are not "agreements" within the meaning of § 1823(e). We therefore agree with the two cases that have held that setoffs accomplished before the assignment of a debt to FDIC–Corporate are not automatically barred by § 1823(e). *Olney Savings & Loan Ass'n v. Trinity Banc Savings Ass'n*, 885 F.2d 266, 274–75 (5th Cir.1989); *Interfirst Bank Abilene v. FDIC*, 777 F.2d 1092, 1094 (5th Cir.1985). So far as our research reveals, no court of appeals has accepted the FDIC's argument.

A *particular* setoff may encounter problems under § 1823(e) even though there is no absolute ban. The debt assertedly set off against the FDIC's asset may have come into being as a result of an "agreement" not reflected in either bank's books. When that happens, § 1823(e) may interdict the setoff even though it would be good under state law. Our case, like *FDIC v. Texarkana National Bank*, 874 F.2d 264 (5th Cir.1989), meets that description. Virden rescinded the Atwater Grain participation because, it believed, Farmersville had lied to it about Atwater's solvency and the priority of the loan. Lies are representations of the insolvent bank, and to the extent the bank represents that it is bound to act as if its representations were true, it has made an agreement (a warranty) not represented on its books. Rescission producing a setoff holds the bank to this unwritten agreement, exactly what § 1823(e) says may not happen.

■ Virden says that its objections sound in tort, while "agreement" in § 1823(e) is a species of contract, but *Langley* stands in the way. The failed bank made oral representations to its customer concerning the security for the loan, and the customer maintained that misrepresentations are not "agreements". A unanimous Court held that because oral representations could have been expressed as written warranties, § 1823(e) applies. When the failure to put in writing what was said orally is the gravamen of the objection to the bank's conduct, it comes within both letter and spirit of § 1823(e). Although this may allow fraud to triumph, by denying the borrower a defense that it would have had if the suit had been

brought by the failed bank rather than the FDIC, the borrower bears much of the blame. One who relies on an oral promise puts others at risk. As the Court said in *Langley,* 484 U.S. at 94, 108 S.Ct. at 403:

> While the borrower who relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute.

When the FDIC examined Farmersville's books, it saw this language in the Atwater Grain participation agreement:

> Participating Bank [Virden] has made an independent investigation of Borrower [Atwater Grain], on which Participating Bank solely relied in extending credit by virtue of its participation in said loan, or has waived such investigation; [and] the undersigned [Farmersville] makes no representation or warranty, and assumes no responsibility, of any kind or character to Participating Bank with respect to the validity, regularity, collectibility or enforceability of the loan, or any security therefor. . . .

Setoff depends on rescission of the Atwater Grain participation; rescission depends on proving that the written agreements were false and that oral statements to the contrary were made; § 1823(e) prevents Virden from making that demonstration.

Two things potentially distinguish this case from *Langley:* (1) the debtor in *Langley* presented a defense based on oral fraud in connection with the note the FDIC sought to collect, while the debtor here defends on the basis of fraud in an unrelated transaction giving rise to a setoff; (2) the debtor in our case asserts that there were material omissions in addition to lies. These differences cut against Virden. If the debtor can't assert fraud even to stop collection of the debt whose existence is attributable in part to the fraud, then misrepresentations that influenced unrelated loans can't supply good defenses. If the debtor can't use the bank's lies to block repayment, it can't use material omissions either—for the half-truth is one form of lie.

Virden regrets signing a writing stating that it had made its own investigation, on which it solely relied. Perhaps, as it says, Farmersville's officers pulled the wool over Virden's eyes; perhaps Virden's officers were in cahoots with Farmersville's; still, Virden signed the document and does not assert that it was unaware of what it was agreeing to ("fraud in the factum"), a form of deceit that survives § 1823(e). So although setoffs valid under federal law (which usually means absorbed state law) and meeting the mutuality requirement may supply good defenses to collection actions by the FDIC, the setoff Virden asserts is not valid under federal law because it depends on contradicting the documents with oral statements.

Virden's last gasp is an assertion that if § 1823(e) extinguishes its setoff, leaving in its place only a right to pursue a receivership estate that has been stripped of assets, then Congress has taken its property without due process of law. It would be better to characterize this as a claim of taking without just compensation, as the United States may take private property for public purposes. At all events, there is no constitutional difficulty. If FDIC–Receiver violated Virden's entitlements by stripping the estate of assets, Virden has a remedy under the Federal Tort Claims Act to the extent we recognized that avenue in *Citizens Bank & Trust.* To the extent Virden's complaint is directed to § 1823(e) itself, as opposed to the FDIC's administration of Farmersville's estate, it is futile. Congress does not violate the Constitution in holding commercial entities to the text of instruments they signed. The Due Process Clause is not an exception to the parol evidence rule.

AFFIRMED.

## ORDER

Virden seeks rehearing on the ground that we overlooked a written promise that Farmersville breached, which would not require it to look behind the documents of the failed bank. Farmersville promised to pay Virden pro rata from Atwater Grain receipts. Farmersville also promised State Bank of Girard, owner of another participation in the Atwater Grain loan, that it would be "on the first out basis"—that is, would be paid ahead of other participants.

For two reasons we think this argument insufficient to justify rehearing. First, Virden did not mention this written representation in its opening brief, pointing to it only in passing at page 6 of the reply brief. This is not enough. Second, Farmersville's promise to pay Girard ahead of Virden is not a reason to rescind the whole Atwater Grain participation, as Virden attempted to do, but is a reason to recover as damages (or setoff) the amount that Virden would have received had it been treated pro rata according to the terms of its participation. Virden elected to litigate this appeal on an all-or-nothing basis and will be held to its choice.

The petition for rehearing is denied.