Theodore L. McCAUGHERTY, Stephen P. Troner, Paul H. Pfleger, and Dale S. Ackerman, general partners of Highland Acquisitions Limited Partnership, a Washington limited partnership, Plaintiffs,

v.

Thomas C. SIFFERMANN and Jane Doe Siffermann, his wife, and the marital community composed thereof; Federal Deposit Insurance Corporation as Manager for Federal Savings and Loan Insurance Corporation Resolution Fund as successor in interest to FSLIC as Receiver for Farmers Savings, a federal savings and loan association, Defendants.

No. C–88–2747 EFL.

United States District Court, N.D. California.

Aug. 30, 1991.

See also 132 F.R.D. 234.

Kim D. Stephens, Tousley Brain, Seattle, Wash., John Stewart, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiffs.

Douglas G. Matsui, Urland, Morello, Dunn & Maynard, Santa Ana, Cal., for defendant and counter-claimant Thomas C. Siffermann.

Robert B. Kaplan, Frandzel & Share, San Francisco, Cal., for defendant and counterclaimant Federal Deposit Ins. Corp.

Paul L. Perito, Washington, Perito & Dubuc, Washington, D.C., Robert A. Goodin, Armour, Goodin, Schlotz, & MacBride, San Francisco, Cal., for defendant and counterclaimant Resolution Trust Corp.

## MEMORANDUM OPINION

LYNCH, District Judge.

### I. SUMMARY

This case involves the issue of whether affirmative causes of action against the Federal Deposit Insurance Corporation–Receiver, based upon misrepresentations by a federal savings and loan association, or its representatives, in connection with the execution of a stock purchase agreement, are barred by the *D'Oench* doctrine and related Title 12 provisions, 12 U.S.C. section 1821(d)(9)(A) and 12 U.S.C. section 1823(e).

Defendant FDIC–Receiver has filed a motion for summary judgment with respect to plaintiffs' third amended complaint. The complaint alleges several causes of action, all founded upon misrepresentation, against, *inter alia*, Thomas C. Siffermann and Farmers Savings, an erstwhile-solvent federal savings and loan association now in the receivership of the FDIC. Based upon its review of the relevant case law and federal statutes, the Court finds that all of plaintiffs' affirmative claims founded on misrepresentation are barred as against FDIC–Receiver by the *D'Oench* doctrine, 12 U.S.C. section 1821(d)(9)(A), and 12 U.S.C. section 1823(e). Accordingly, defendant FDIC's motion for summary judgment is granted.

### II. BACKGROUND

Plaintiffs are all general partners of Highland Acquisitions Limited Partnership, a Washington state limited partnership ("HALP"). Defendants are the Federal Deposit Insurance Corporation as successor in interest to the Federal Savings and Loan Insurance Corporation as receiver of Farmers Savings ("FDIC–Receiver") and Thomas C. Siffermann and Jane Doe Siffermann, his wife.

On July 12, 1988, plaintiffs filed the instant lawsuit against defendants. Thereafter, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed receiver of Farmers Savings, and thereby succeeded to all interests of Farmers Savings in this action. Subsequently, this Court entered an order substituting FDIC–Receiver for FSLIC–Receiver as a defendant in the lawsuit. FDIC–Receiver is the defendant who has brought this motion.

This action arose out of deal struck between plaintiffs' partnership, HALP, and Farmers Savings. On July 2, 1987, HALP purchased from Farmers Savings all the stock in and receivables of a corporate entity named FSB, Inc. In consideration, HALP paid to Farmers Savings a total purchase price of approximately $31.8 million. The consideration package was composed of, in relevant part, a promissory note, made by HALP to Farmers Savings as payee in the amount of approximately $11.3 million ("HALP note"), and cash and other funds to be transferred by wire in the amount of approximately $20.5 million.[1] HALP has not made any payments on the HALP note because, by its terms, payments do not come due until 1992. The plaintiffs did pay Farmers' Savings $20.5 million in cash and receivables at the time that the stock purchase transaction was executed.

The parties to the transaction entered into the Stock Purchase Agreement, which set forth the transactions' terms, such as the above consideration, and addressed representations and warranties. Section 4 of the Stock Purchase Agreement recites the representations and warranties of the purchaser and provides, at subsection 3, "The Purchaser acknowledges that its decision to purchase the FSB Shares and the Receivables is based upon the Purchaser's own investigation and is not based upon

---

1. One element of consideration, not at issue here, was a promissory note for $56,850, the "Siffermann note."

any representation made by the Seller except as set forth ... in Section 3 hereof," which lists the representations and warranties of the seller.

All claims in plaintiffs' third amended complaint derive factually from a "phantom-bidder" scheme allegedly employed by defendant Thomas Siffermann, acting on behalf of Farmers Savings, to induce plaintiffs to pay more than market value for the stock of FSB, Inc. The complaint's allegations, which both parties assume to be true for purposes of this motion, are as follows: while negotiating the possible sale of FSB, Inc., Siffermann misrepresented to plaintiffs that many persons, the so-called "phantoms", were interested in purchasing FSB, Inc., and that all the offers but one were in the mid-thirty million dollar range. Siffermann used the ruse of phantom, higher bidders to induce plaintiffs to raise their offering price for the stock of FSB, Inc., even when plaintiffs' bid was the highest one. Siffermann's actions were approved of by the Board of Directors of Farmers Savings.

The complaint alleges that the plaintiffs relied on Siffermann's misrepresentations and material omissions in purchasing the stock of FSB, Inc. Absent the misrepresentations, plaintiffs, via HALP, would not have purchased FSB, Inc. at the price or the terms to which they obligated themselves under the Stock Purchase Agreement dated July 1, 1987.[2]

Plaintiffs' third amended complaint asserts causes of action for fraud, negligence, misrepresentation, and violations of the federal and state securities laws.[3] Plaintiffs pray for relief in the form of damages and cancellation of the promissory notes made in connection with the Stock Purchase Agreement or, in the alternative, offset of the amounts due under the notes against amounts recovered in this action. Noteworthy is the fact that the amount of damages prayed for, $11 million dollars, is approximately the amount outstanding on the HALP note for which plaintiffs remain obligated.

Defendant FDIC–Receiver has filed counterclaims for breach of the Stock Purchase Agreement and prays for acceleration of the $11 million HALP note, held by FDIC, originally provided by plaintiffs in consideration for FSB, Inc.

In a prior order dated May 7, 1991, this Court ruled that plaintiffs are estopped by the *D'Oench* doctrine and 12 U.S.C. section 1823(e) from asserting fraudulent inducement as a defense to payment of the HALP note. Defendant FDIC now seeks, by a motion for summary judgment, a dismissal of plaintiffs' third amended complaint.

## III. DISCUSSION

### A. Standard Of Review.

The governing standard is familiar. Summary judgment may be granted only if

---

**2.** In their memorandum and at oral argument, plaintiffs attempted to characterize the fraud as only related to the bidding process, not to their entrance into the Stock Purchase Agreement. The Court finds this distinction completely artificial, if not somewhat disingenuous. Plaintiffs' complaint itself describes the reliance and damages, essential elements of fraud, in terms of purchase and payment: "HALP relied on Siffermann's misrepresentations and material omissions in purchasing the stock of FSB ... HALP paid at least $11 million more than the fair market value of the FSB stock based upon the material misrepresentation and omissions of the defendants...." *Complaint*, § 4.18.

Bidding too highly, alone, cannot cause damage. The first arguable damages arise when one actually enters into a purchase agreement pursuant to acceptance of the bid. The purchase of the FSB stock took place through plaintiffs' entrance into the Stock Purchase Agreement. The

payment here took the form of approximately $20.5 million in cash and receivables and $11.3 million in notes. In substance, plaintiffs' reliance constituted purchasing the stock of FSB, Inc. at too-high a price, that is to say, entering into the Stock Purchase Agreement at terms they retrospectively deem unfair.

**3.** Specifically: (1) Misrepresentation in connection with the sale of stock of FSB, Inc. to HALP constituting a manipulative, deceptive device or contrivance in violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 promulgated thereunder; (2) control person liability of Farmers Savings for such misrepresentations and misleading omissions under section 20 of the Securities Exchange Act; (3) fraudulent misrepresentation in the sale of securities in violation of California Corp.Code sections 25400 and 25500; (4) common law fraud; and (5) negligent misrepresentation.

no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

### B. Overview Of The D'Oench Doctrine And 12 U.S.C. Section 1823(e).

The Court must analyze the motion under the legal rubrics of both the *D'Oench* doctrine and 12 U.S.C. section 1823(e) because the latter, amended by FIRREA in 1989, now extends its coverage to the FDIC in its receivership capacity. *See* 12 U.S.C. section 1823(e); *see also Federal Deposit Ins. Corp. v. State Bank of Virden,* 893 F.2d 139, 143 (7th Cir.1990) (FIRREA extends coverage of section 1823(e) to FDIC–Receiver).

The *D'Oench* doctrine is a federal common law rule of equitable estoppel which, as originally formulated, held that borrowers were precluded from defending against payment of an obligation held by the FDIC on the basis that secret, unrecorded "side agreements" allegedly altered the obligation's terms. The Supreme Court, in the namesake case of *D'Oench, Duhme & Co. v. Fed. Deposit Insurance Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), based the doctrine upon the "federal policy to protect respondent [FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of banks which respondent insures or to which it makes loans." *D'Oench,* 315 U.S. at 457, 62 S.Ct. at 679. Public policy mandated that a borrower be estopped from escaping liability based upon an unrecorded agreement that altered the terms of a bank obligation, even if the borrower did not intend to deceive creditors. *Id.* at 459, 62 S.Ct. at 680. Therefore, intent to deceive is irrelevant; lending oneself to a scheme which does or is likely to mislead the federal banking authority is sufficient. *Taylor Trust v. Security Trust Fed. Sav. & Loan Assoc.,* 844 F.2d 337, 342 (6th Cir.1988); *Federal Deposit Ins. Corp. v. Investors Associates X., Ltd,* 775 F.2d 152, 154 (6th Cir.1985); *Federal Deposit Ins. Corp. v. First Nat. Finance,* 587 F.2d 1009, 1012 (9th Cir.1978).

Congress partially codified the *D'Oench* doctrine in the Federal Deposit Insurance Act of 1950, section 2[13](e), 12 U.S.C. section 1823(e). As amended, it provides that:

> No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and,
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

*Id.* A primary objective of section 1823(e), like the *D'Oench* doctrine, is systemic—it seeks to ensure an efficient, sound banking system by permitting federal bank regulators to trust that "what you see is what you get," when relying upon an examination of a bank's records. Thus, the Supreme Court has stated that a central purpose of section 1823(e) is to allow federal and state bank examiners to rely on a

bank's record in evaluating the worth of its assets for fiscal soundness, or when deciding whether to liquidate or provide financing for a purchase and assumption by another bank. *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The writing requirement of section 1823(e) justifies the federal regulators' reliance on a bank's records.

Section 1823(e) focuses on agreements only, and precludes their use to diminish the FDIC's interest in an asset unless the four statutory requirements are met. On the other hand, the *D'Oench* doctrine, unlike the statute, is a rule of equitable estoppel and broadly obtains to *any* scheme which tends to deceive the banking authority when raised by the borrower as a defense. *See* Note *Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail*, 62 *S.Cal.L.Rev.* 253, 271 (1988).

The core theory of defendant's argument on summary judgment is that because the *D'Oench* doctrine and section 1823 would bar plaintiffs' claims as a defense to payment on the HALP note, those claims framed as affirmative causes of action must similarly be barred. In analyzing the merit of this position, it is relevant that plaintiffs pray for different types of relief: they pray for rights of offset and/or cancellation of the HALP notes and they pray for damages. The Court shall analyze defendant's contention in the context of the request of cancellation, first, and in the context of the prayer for damages, second.

### C. Plaintiffs' Affirmative Claim For Cancellation Of The HALP Note Is Barred By The D'Oench Doctrine And Section 1823(e).

In *Langley v. Federal Deposit Insurance Corporation*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court made pellucid their position that section 1823(e) precludes the assertion of an oral misrepresentation as a defense to payment on a promissory note held by the FDIC as successor-in-interest to a bank. In that case, the Langleys alleged that the note on which they sought to avoid pay-

ment had been procured through various oral, fraudulent misrepresentations by the bank. Employing contractual analysis, the Court characterized petitioners' defense to payment as the contention that the misrepresentations were warranties whose truthfulness was a condition precedent to their obligation under the note. "Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the bank authority, whether the condition consists of a performance of a counter-promise (as in *D'Oench, Duhme*) or the truthfulness of a warranted fact." *Id.* 484 U.S. at 93, 108 S.Ct. at 402. Because lending oneself to such schemes is exactly what *D'Oench* sought to prevent, and section 1823 should be construed in light of *D'Oench*, the Court ruled that oral representations whose truth is a condition to one's duty to pay on a note is an agreement for purposes of section 1823(e). Because unwritten, the agreement was invalid as against the FDIC under section 1823(e) and therefore barred a defense to payment on a note held by the FDIC.

■ Where a defense to payment of a note would be barred by section 1823 and *D'Oench*, that defense framed as an affirmative cause of action seeking rescission is likewise barred. The Fifth Circuit has adopted this rule in cases quite similar to the one at bar. In *Kilpatrick v. Riddle*, 907 F.2d 1523 (5th Cir.1990), *cert. denied, Rogers v. Federal Deposit Ins. Corp.*, —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991), plaintiffs brought suit seeking rescission of a note, held by the FDIC, on the grounds that a bank, the original payee, induced plaintiffs to execute the note through fraudulent, oral misrepresentations and/or material omissions. The Fifth Circuit ruled that, after *Langley*, it is clear that borrowers who execute facially-unqualified obligations may not defend against payment by claiming fraudulent inducement. It was equally clear that if the *D'Oench* doctrine precludes the defense, it must also bar the converse cause of action: "if the plaintiffs' defenses are barred by the *D'Oench, Duhme* doctrine, then their

defenses framed as causes of action must also be barred, because any other result would nullify the doctrine." *Id.* at 1528, *citing to Bell & Murphy & Assocs. v. Interfirst Bank Gateway,* 894 F.2d 750, 753 (5th Cir.1990); *see also Beighley v. Federal Deposit Ins. Corp.,* 868 F.2d 776, 784 (5th Cir.1989) (*D'Oench* bars affirmative claims against FDIC-receiver based on breach of unwritten agreement between bank and note-obligor).

■ Plaintiffs endeavor to distinguish *Kilpatrick* on the ground that there the plaintiffs claimed misrepresentation related to the assets purchased and here plaintiffs allege misrepresentations regarding the bidding process unrelated to the note or the assets purchased. It is a distinction that does not make a difference. The holding of neither *Langley* nor *Kilpatrick* was circumscribed to cases in which the fraudulent misrepresentations relate only to the assets purchased. Rather, the *Langley* Court held that if the truthfulness of *a warranted fact* is a condition precedent to one's duty of payment and is not in writing, it is an invalid agreement under section 1823. The holding of *Langley* encompasses warranted facts generally, not just those related to the asset purchased. *See also Kilpatrick,* 907 F.2d at 1527 (quoting *Langley* language relating to "a warranted fact," generally, with approval). What is crucial is not that the representation concerns the assets being purchased, but that it is treated as a warranty whose veracity is a condition precedent to repayment under a note. Such is the case here.

In addition, plaintiffs seek to distinguish their case by arguing that, unlike *Langley,* they do not dispute the enforceability of the note. Plaintiffs are directed to their prayer for cancellation of the note. What is a claim for cancellation grounded on fraud if not a challenge to the note's enforceability? Any distinction could only be semantic, and insufficient to defeat section 1823(e) and the *D'Oench* doctrine.

■ In sum, *Langley* holds that section 1823(e) precludes an obligor from asserting oral misrepresentations as a defense to payment upon a note held by the FDIC. *Kilpatrick* makes clear that one cannot attempt to do by affirmative relief that which section 1823 precludes as a defense. Accordingly, plaintiffs' claims for relief in the form of cancellation of the note based on misrepresentations are barred.[4]

## D. Plaintiffs' Affirmative Claims For Fraud, Misrepresentation, And Securities Fraud Violations Seeking Relief In The Form Of Damages Are Barred by 12 U.S.C. Section 1821(d)(9)(A), 12 U.S.C. Section 1823(e), And The D'Oench Doctrine.

Having determined that plaintiff's prayer for cancellation of the note is barred, the remaining issue is whether plaintiffs may seek recovery of damages from the general

---

**4.** The substantial bar to a claim for rescission laid down by the *D'Oench* doctrine and section 1823(e) applies to causes of action based on misrepresentation not only such as for common law fraud, but also state and federal securities law fraud. In *Kilpatrick,* the Fifth Circuit ruled that the *D'Oench* doctrine barred a plaintiff's claim for rescission based upon misrepresentation in violation of the federal securities laws. The court rejected appellant's argument that the policy of investor protection embodied in the securities laws outweighed the federal policies animating the *D'Oench, Duhme* doctrine.

The Fifth Circuit reasoned that permitting borrowers to maintain federal securities law claims grounded on misrepresentation would allow plaintiffs to simply recast their fraud defense, precluded by *D'Oench,* as affirmative securities fraud claims. In addition, the Fifth Circuit enunciated the following rationale: (1)

precluding an action for rescission of a note under the federal securities laws denies only a certain remedy, one against the FDIC, not all remedies. A plaintiff may still seek recovery under the securities laws against the individual or individuals who defrauded him; (2) the *D'Oench* doctrine favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interest of obligers on agreements with the bank, who can; and (3) to carve out an exception for federal securities laws would undermine the federal policy underlying the *D'Oench* doctrine of protecting the FDIC and the public funds it administers from misrepresentations as to the assets and securities of federally-insured banks. *Id.* at 1529. In accordance with *Kilpatrick,* the Court finds that plaintiffs' federal and state securities law claims are also barred by *D'Oench* and section 1823(e).

assets of Farmers Savings in receivership based upon its various causes of actions.

■ Plaintiffs argue that neither the *D'Oench* doctrine, 12 U.S.C. section 1823(e), nor 12 U.S.C. section 1821(d)(9)(A) prevent them from recovering damages from the general assets of Farmers Savings in receivership. Because Siffermann's fraudulent misrepresentation of "phantom bidders" induced them to pay in part, leaving the note aside, approximately $18 million [5] in cash and receivables for the FSB stock, *D'Oench*, they maintain, should not bar them from recovering damages up to that amount.

The first issue is whether plaintiffs' affirmative claims grounded upon misrepresentation implicate an agreement that fails to meet the requirements of 12 U.S.C. section 1823. 12 U.S.C. section 1821(d)(9)(A) provides that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of ... a claim against the [FDIC] Receiver or the [Resolution Trust] corporation." Because agreements under section 1823(e) must be in writing, any of plaintiffs' affirmative claims against the FDIC based upon an unwritten agreement must fail. *See Tuxedo Beach Club Corp. v. City Federal Savings Bank*, 749 F.Supp. 635, 645 (D.N.J.1990).

In *Langley*, the Supreme Court held that oral representations made by a bank, if their truthfulness is a condition to the other party's duties under a promissory note, constitute an "agreement" invalid against the FDIC pursuant to section 1823(e). *Langley*, 484 U.S. at 91–93, 108 S.Ct. at 401–02. In the instant case, the savings and loan association, by Thomas Siffermann, allegedly misrepresented the bids. Plaintiffs relied upon these misrepresentations, according to the third amended complaint, in purchasing the stock of FSB on or about July 1, 1987 at the price and terms agreed upon. That purchase was cast in legal form in the Stock Purchase Agreement. One of the conditions of the agreement was that, in exchange for the FSB stock, plaintiff pay approximately $18 million in cash and receivables. Plaintiffs now claim that the price it paid, as a condition of the Stock Purchase Agreement, was $11 million dollars over market value and seek that much in damages.

This case differs from *Langley* in one respect. Plaintiffs have partially-performed by paying money under the terms of the written agreement. In *Langley*, the plaintiffs had not performed their duty under the note. Because they have paid, plaintiffs claim that they are not challenging the enforceability of the Stock Purchase Agreement by seeking to recover damages up to $11 million they allegedly overpaid pursuant to it. However, by seeking to recover damages for amounts allegedly overpaid under the Stock Purchase Agreement, plaintiffs are, in substance, arguing that a condition to the validity of their duty to pay the purchase price set forth in the agreement's written terms was the truthfulness of Siffermann's representations regarding the bidding process. No such condition was stated in agreement.

Plaintiffs have already paid in the purchase price, in part, under their binding obligation in the Stock Purchase Agreement. It does not appear to this Court that this fortuity should allow plaintiffs to attack the obligation, retrospectively, based upon unrecorded, oral representations whose truthfulness was not set forth as a condition to their obligation under the agreement.

For example, assume plaintiffs agreed to pay $10 million dollars cash, but, by the terms of the Stock Purchase Agreement, payment was deferred until one month after the date of the agreement. If the FDIC was appointed receiver of the bank in the interim, section 1823(e) and *Langley* would preclude plaintiffs from avoiding payment of their obligation because of a

---

5. To prevent confusion, the Court notes that plaintiffs asserted in this motion that $18 million in cash was paid. The Court's calculation of approximately $20.5, stated in section II, included cash and receivables. Because the precise figure does not affect the Court's disposition of the case, the Court relies upon the $18 million dollar figure when referring to plaintiffs' arguments.

misrepresented warranted fact not within the four corners of the written agreement. Now assume that plaintiffs paid the $10 million cash on the date the agreement was signed. Subsequently, the FDIC is appointed receiver for the bank. Should plaintiffs be able to recover damages up to the amount they paid in under the agreement based upon a misrepresentation not included as a condition to payment under the agreement?

In the first case, the plaintiffs are asserting the misrepresented fact's truthfulness as a condition precedent to their duty to pay. In the second case, plaintiffs are asserting that the facts truthfulness was a condition to the validity of their executed duty to pay and retroactively attacking it. In either case, the result is to undermine the bank regulators' reliance upon the bank's records, here the Stock Purchase Agreement, in determining the worth of the bank's assets.

The Supreme Court has stated that the term "agreement" under section 1823(e) must be construed to facilitate the statute's underlying policies:

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records containing seemingly unqualified notes that are in fact subject to undisclosed conditions.

*Id.* at 92, 108 S.Ct. at 401. In addition, the Court explained the rationale of *D'Oench* to be that "when the maker 'lent himself to a *scheme or arrangement* whereby the banking authority ... was likely to be misled,' that scheme or arrangement could not be the basis for a defense against the FDIC." *Id.* at 92, 108 S.Ct. at 402 (emphasis in the original). One who signs an unqualified note, the Court, reasoned, subject to an unrecorded condition upon its repayment, has lent himself to a scheme likely to mislead banking authorities, where the condition consists of the truthfulness of a warranted fact. *Id.* at 92, 108 S.Ct. at 401. One similarly misleads the

banking authorities who obligates himself to pay in a certain purchase price under a stock purchase agreement, a record of the bank, and later attempts to recover damages for part of the purchase price paid in by claiming that the validity of that purchase price was subject to an unwritten condition not apparent on the face of the agreement.

■ Therefore, the Court finds that the alleged misrepresentations at issue constitute an agreement for purposes of section 1823(e). Because it is unwritten and therefore fails to meet the requirements of section 1823(e), any affirmative claims against the FDIC–Receiver based upon it are precluded by section 1821(d)(9)(A).

Although section 1821(d)(9)(A) provides a sufficient barrier to the affirmative claims in this action, the Court observes that other courts have held that section 1823(e) and/or the *D'Oench* doctrine preclude the assertion of affirmative claims against the FDIC for torts of misrepresentation or breach of fiduciary duty where the tort is based on a secret, side agreement not reflected in the bank's records. *See, e.g., Beighley,* 868 F.2d at 782–84; *see also Oliver v. Resolution Trust Corporation,* 747 F.Supp. 1351 (E.D.Mo.1990) (*D'Oench,* section 1823(e) bar affirmative claims based upon alleged misrepresentation, which formed secret, "side agreements" to the loan).

In opposition, plaintiffs rely on *Vernon v. Resolution Trust Corp.,* 907 F.2d 1101, 1107 (11th Cir.1990), for the proposition that the *D'Oench* doctrine does not preclude affirmative claims for fraudulent misrepresentation against a failed depository institution if they are not asserted to attack particular debts or monetary obligations, but rather to recover damages from the failed institution's general assets. In that case, purchasers of stock of a savings and loan association asserted that the S & L had misrepresented material financial information in the stock purchase transaction. The S & L failed, and FSLIC was appointed its receiver. At the time suit was brought, the purchasers had fully

executed the purchase agreement and paid $3.6 million for the stock.

The *Vernon* court ruled that *D'Oench* did not bar the plaintiff from suing to recover from the general assets of the failed banks for, *inter alia*, the tort of common law fraud. The Court expressly declined to extend the *D'Oench* doctrine "to preserve all assets, whether actually possessed or receivable, acquired by a federal insurer ... from all claims tending to diminish those assets...." The court's reasoning suggested, as a corollary, that the *D'Oench* doctrine only protects a federal insurer from claims attacking the validity of, or defending against payment of, a specific debt or particular monetary obligation of the failed institutions held by the federal insurer.[6]

However, the *Vernon* court emphasized that its holding was limited in one critical respect relevant to the case *sub judice*. It underscored that their case was distinguished from the typical *D'Oench* case because in the former the plaintiffs bringing suit were "not obligees trying to avoid their commitment on an asset ... acquired [by the federal insurer or successor in interest] or via a purchase and assumption agreement." That is to say, the plaintiffs had fully-executed the stock purchase agreement by paying the full purchase price and were not seeking to avoid liability on a promissory note. *See Tuxedo Beach Club Corp. v. City Federal Savings Bank*, 749 F.Supp. 635, 645 (D.N.J.1990) (*Vernon* distinguished from cases where the FDIC or some successor-in-interest defending validity of a particular monetary obligation owed to the failed bank). In the instant case, plaintiffs are trying to avoid their commitment on the promissory note by

seeking its cancellation and/or set-off. Therefore, this case is critically distinguished by precisely the limiting factor set forth in *Vernon*.

Even if plaintiffs were not seeking cancellation of the note but only damages, and therefore their claims could not defeat the FDIC's interest in a specific monetary obligation of the bank, substantial authority supports the position that the *D'Oench* doctrine nevertheless bars their affirmative claims against the FDIC based upon unrecorded agreements. In contrast to Eleventh Circuit in *Vernon*, the Fifth Circuit enunciated this position in *Beighley*, 868 F.2d at 776. In that case, an obligor on a note to a bank sued the bank, alleging the latter had breached an unwritten, side agreement to fund further loans. The FDIC, as receiver for the bank, took over the lawsuit and counterclaimed for payment on the note. The *Beighley* court ruled that *D'Oench* precluded any affirmative claim for breach of an unwritten side agreement because such a scheme would be likely to mislead the banking authorities. "We have found that 'if an obligor may assert oral side agreements reducing the value of assets formerly held by the bank, then the FDIC would be misled.'" *Id.* at 784 (quoting *Chatham Ventures v. FDIC*, 651 F.2d 355, 361 (5th Cir.1981).

■ Subsequent decisions makes clear the Fifth Circuit rule that the *D'Oench* doctrine applies even where the unrecorded agreement at issue is wholly-unrelated to any specific monetary obligation of the bank, but is merely asserted to recover damages. In *Bell & Murphy & Assoc. Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750 (5th Cir.1990), *cert. denied, Bell &*

---

6. The authority of *Vernon* may be eroding within the Eleventh Circuit itself. A subsequent decision, although not calling into question *Vernon*, has strongly urged that *D'Oench* and section 1823(e) may apply to "any type of asset" of a bank. *See Twin Construction Inc. v. Boca Raton, Inc.*, 925 F.2d 378 (11th Cir.1991). In *Twin Construction*, the Eleventh Circuit stated, "The applicability of *D'Oench* to any type of asset follows logically from the language in the *D'Oench* case about protecting the banking authority from misrepresentations as to 'securities or other assets.' Additionally, section 1823(e)'s

'any asset' language confirms that the assets covered are far broader than the narrow reading appellant offers.... If *any* of a bank's assets are diminished by agreements not contained in the records of the bank, the regulatory authorities cannot [make reliable evaluations of the financial institution's assets]." (emphasis in the original).

Such language runs counter to the rationale in *Vernon* that *D'Oench* only encompasses assets in the form of particular debts or monetary obligations.

*Murphy & Assoc., Inc. v. Federal Deposit Ins. Corp,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), plaintiff alleged that the bank, First RepublicBank Dallas, N.A., breached an unrecorded agreement whereby plaintiff would surrender certain accounts receivable to the bank in return for an extension of corporate loans. The plaintiff sued for misrepresentation which allegedly induced the agreement. In argument, the plaintiff contended that it was not disputing its obligation to pay back outstanding debt, but apparently only seeking to recover damages. Plaintiff argued:

> [T]he side agreement at issue here, while affecting Republic's total worth, does not diminish the value of Bell & Murphy's admitted outstanding debt to Republic. The side agreement thus could not have misled the FDIC regarding the value of Republic's assets, and *D'Oench, Duhme* does not preclude Bell & Murphy from asserting that side agreement against the FDIC.

*Id.* at 753. The Fifth Circuit rejected the argument. It reasoned that the affirmative claim based on unrecorded agreements was barred because it was not clearly evidenced in the banks records, could not have been discovered by bank examiners, and therefore was not enforceable against the FDIC.

Numerous decisions from the Fifth Circuit have followed this rule. A common rationale is that an unwritten representation forming an unrecorded agreement, even if not asserted to attack a specific monetary obligation, is a scheme to which plaintiff lends himself that is likely to mislead the federal banking regulators. For example, in *Bowen v. FDIC,* 915 F.2d 1013 (5th Cir.1990), plaintiffs sued a bank for breach of an oral promise to extend a loan. After the FDIC succeeded to the bank's interest in the suit, plaintiffs argued that *D'Oench* did not bar their affirmative tort claims, including one for constructive fraud, because no note was involved in the case. Therefore, their agreement did not involve a specific monetary obligation held by the FDIC. The court disagreed, explaining the *D'Oench* doctrine's evolution:

The original *D'Oench* case applied only to a secret agreement used as a defense to a suit on a note by FDIC in its corporate capacity. It barred recourse to such side agreements, citing the "direct relation" between "the integrity of ostensible assets" and the solvency of a bank. Here, although the solvency considerations are similar, the fact situation is not. We are presented in this case with an *affirmative* claim, against FDIC–*Receiver,* with *no* note whose terms are subjected to a secret protocol. Nonetheless, *D'Oench* is applicable to Bowen's claims, because the doctrine has evolved to a rule that today is expansive and perhaps startling in its severity. The doctrine extension we describe is considerable, but we believe experience has been a wise teacher.

The modern *D'Oench* rule protects the FDIC, as receiver of a failed bank or as purchaser of its assets, from a borrower who has " 'lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled." In particular, *D'Oench* bars the use of unrecorded agreements between the borrower and the bank as the basis for defenses or claims against the FDIC. The agreement need not implicate a specific obligation, such as a note or other asset held by the FDIC. Simply put, transactions not reflected on the bank's books do not appear on the judicial radar screen either. Accordingly, the Bowens' suit must fail....

*Id.* at 1015–1016 (citations omitted); *accord Shuler v. Resolution Trust Corp.,* 757 F.Supp. 761, 767 (S.D.Miss.1991); *Fair v. NCNB Texas Nat'l Bank,* 733 F.Supp. 1099, 1104 (N.D.Tex.1990); *cf. Resolution Trust Corp. v. Murray,* 935 F.2d 89, 94 (5th Cir.1991).

A case with strikingly analogous facts to the one at bar is *Royal Bank of Canada v. Federal Deposit Ins. Corp.,* 733 F.Supp. 1091 (N.D.Tex.1990). There, the plaintiff, a bank, paid in $10 million and purchased a financial property, a participation loan interest, from a second bank. The FDIC was appointed receiver for the latter bank. The plaintiff sued, asserting that misrepresen-

tations fraudulently induced the purchase. Like this case, the plaintiff had executed a duty under an agreement by paying in money to purchase a financial property from the bank. As here, plaintiff sued on the ground that misrepresentations fraudulently induced the purchase.

The court ruled that, even though plaintiff only sought to recover, not to avoid payment on any *specific* monetary obligation or note held by the FDIC, the *D'Oench* doctrine barred plaintiff's affirmative claim because the doctrine applies "regardless of whether a failed institution intends by its conduct primarily to induce execution of a note or *to incline participation in some other venture.*" *Id.* at 1096 (quoting *Fair v. NCNB Texas Nat'l Bank,* 733 F.Supp. 1099, 1104 (N.D.Tex. 1990) (emphasis added). The *D'Oench* doctrine may apply outside a lender-borrower framework, "so long as the party seeking to recover must rely upon a scheme or arrangement likely to mislead bank examiners." *Id.* at 1096. In the context of purchasing an interest in a participation agreement, "a party joins in such an arrangement by failing to get the insolvent bank's representation in writing." *Id.*[7]

On the facts of this case, plaintiffs, by entering into the Stock Purchase Agreement without getting the oral warranties about the so-called "phantom bidding" written into the agreement, lent themselves to a scheme that would mislead the banking authorities. Under the Fifth Circuit rule, even if plaintiffs were not seeking cancellation or offset, but only damages, the *D'Oench, Duhme* doctrine would preclude affirmative claims against the FDIC for misrepresentation inducing plaintiffs to enter into the Stock Purchase Agreement.

The Tenth Circuit appears to have joined the company of the Fifth Circuit in taking this position, as indicated by *Federal Deposit Ins. Corp. v. Bell,* 892 F.2d 64 (10th Cir.1989), *cert. dismissed, Bell v. Federal Deposit Ins. Corp,* —— U.S. ——, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990).

There, Bell, the defendant, purchased a partnership interest from a bank. At the same time, he assumed a guaranty of loans extended by the bank to the partnership. The FDIC, as receiver for the bank, prosecuted a lawsuit to recover on the guaranty from Bell. He counterclaimed for securities and common law fraud, alleging that the bank misrepresented the partnership's value, thereby fraudulently inducing his purchase. Although not addressing whether Bell sought to avoid a monetary obligation or merely recover damages, the Tenth Circuit nevertheless ruled that the unwritten misrepresentations inducing purchase of the partnership constituted agreements invalid as against the FDIC under section 1823(e). As a result, Bell was barred from prosecuting any of his affirmative claims based upon them against the FDIC. The material facts of *Bell* are similar to those at bar, and this Court reaches the same result.

Although recognizing that the rule of the Fifth Circuit is in some tension with the position of the Eleventh Circuit in *Vernon,* this Court considers the former to accord better with the Ninth Circuit's view of the policies underlying the *D'Oench* doctrine. The Ninth Circuit has recently stated,

> As the Savings and Loan crisis in which this nation is mired continues to unfold, regulators are discovering abuses the *D'Oench* Court could not have imagined or predicted. The FSLIC's ability to evaluate the financial condition of troubled thrift institutions depends, now more than ever, upon the protective shield of *D'Oench.*

*Federal Sav. & Loan Ins. v. Gemini Management,* 921 F.2d 241, 245 (9th Cir. 1990). The Fifth Circuit, explaining its view of the rule, stated well that *"D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books. The doctrine means that the government has no duty to compile oral histories of the bank's customers and ... officers ... [or] search for a

---

7. "[W]hen the failure to put in writing what was said orally is the gravamen of the objection to the bank's conduct, it comes within both letter and spirit of § 1823(e)." *FDIC v. State Bank of Virden,* 893 F.2d 139, 143 (7th Cir.1990).

bank's unrecorded liabilities." *Bowen*, 915 F.2d at 1016.

The *D'Oench* doctrine places the risk of secret agreements on the persons better-positioned to guard against them. The "doctrine thus favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interest of borrowers, who can." *Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.*, 901 F.2d 1244, 1248 (5th Cir.1990).

As a result, the doctrine is not unfairly Draconian. If Siffermann's oral representations of "phantom bidders" were so vital to plaintiffs' decision to enter the Stock Purchase Agreement at that price and on those terms, plaintiffs could have easily evaded *D'Oench*, by ensuring that those representations—agreements—were reflected in the purchase agreement itself, as part of the bank's records.

Finally, the result reached under the Fifth Circuit rule serves a basic federal policy underlying the *D'Oench* doctrine, the protection of the FDIC "[a]nd the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of banks which [it] insures...." *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679. This policy would be thwarted by permitting a party to recover damages from FDIC–Receiver, for assets paid in under a written agreement with a bank, based on misrepresentations which were not written into the agreement as conditions to the validity of their duty to pay thereunder.

Therefore, the Court concludes that 12 U.S.C. section 1821(d)(9)(A), 12 U.S.C. section 1823(e) and the *D'Oench* doctrine bar plaintiffs' affirmative claim against the FDIC as defendant in connection with the purchase of the stock of FSB, Inc.[8]

### E. The *D'Oench* Doctrine, Section 1821(d)(9)(A) And Section 1823(e) Bar Plaintiffs' Claim For Relief In The Form Of A Constructive Trust.

■ The Court rejects plaintiffs' new contention, unapparent on the face of their complaint, that the *D'Oench* doctrine does not preclude a claim for relief in the form of a constructive trust. To establish a constructive trust under California law, plaintiffs must show that the defendant gained property by fraud, accident, mistake, undue influence, the violation of a trust, or some other wrongful act. *McKnight v. Faber*, 185 Cal.App.3d 639, 648, 230 Cal.Rptr. 57 (1986). Here, based on the complaint, plaintiffs could seek to establish the trust based either upon fraud or misrepresentation, or upon violation of the federal securities laws. Because the Court has held that *D'Oench*, section 1821(d)(9)(A) and section 1823(e) preclude establishment of affirmative claims on those bases, plaintiffs' claim for a constructive trust derived from such claims is likewise barred.[9]

### F. The FDIC Is Not Judicially–Estopped From Arguing That HALP's Affirmative Claims Are Barred.

Plaintiffs' backstop defense against summary judgment is that FDIC–Receiver is

---

8. For the reasons stated in footnote five above, the Court finds that *all* of plaintiffs' affirmative claims, including those for federal or state securities fraud, are barred. *See also Bell*, 892 F.2d at 64–66 (upholding judgment that section 1823(e) bars affirmative claims for common law fraud and "securities fraud").

Because plaintiffs' affirmative claim for damages and rescission fail, it follows that plaintiffs' claim for relief in the form of set-off of sums due and owing under the HALP note is also barred. *See generally Federal Deposit Ins. Corp. v. State Bank of Virden*, 893 F.2d 139 (7th Cir. 1990).

9. This opinion is not inconsistent with *Downriver Community Federal Credit Union v. Penn*

*Square Bank*, 879 F.2d 754 (10th Cir.1989), cited by plaintiffs. First, that case did not involve the *D'Oench* doctrine. Second, plaintiffs were not, as here, seeking to escape liability on a monetary obligation owing to the FDIC. Third, the plaintiffs in that case, who claimed fraud in relation to monies deposited in a bank, were not contesting a condition to the validity of their obligations under any agreement in the bank's records. Therefore, the court in *Downriver* did not have occasion to determine whether the fraudulent misrepresentations at issue constituted an agreement under *Langley* for purposes of section 1823(e). As a consequence, *Downriver* is inapposite to the case at bar.

estopped from attempting to argue that plaintiffs' affirmative claims based on misrepresentation are barred because the FDIC wants to establish the existence of those barred claims as a predicate for accelerating the HALP note. Plaintiffs' characterization is incorrect. Defendant's counterclaim only asserts that *"in the event* that those allegations [in plaintiffs' amended complaint] are found to be true," then the FSLIC, the FDIC's predecessor in interest, alleges that plaintiffs' breached warranties in the Stock Purchase Agreement, thereby triggering acceleration of the HALP note (emphasis added). FDIC–Receiver's claim of a *D'Oench* bar does not result in any legal finding that plaintiffs' allegations are true or untrue. As no finding as to the truth of the allegations is required for the Court to enter summary judgment, FDIC–Receiver's position in the motion for summary judgment cannot be said to contradict its position within its counterclaims.

A different question is whether the Court's finding herein estops the FDIC from pursuing their counterclaim for acceleration of the note. That is a separate issue not before the Court today. Plaintiffs may raise the estoppel argument in seeking a or opposing a summary judgment on the FDIC's counterclaims, or alternatively, at trial.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motion for summary judgment of defendant FDIC–Receiver on the issue of whether plaintiffs' affirmative claims for relief are barred by the *D'Oench* doctrine and related Title 12 provisions. The Court finds that all of plaintiffs' affirmative causes of action depend upon an unwritten "agreement" for purposes of section 1823(e) and therefore are invalid as against FDIC–Receiver. In addition, the Court holds that the unwritten agreement was a scheme likely to mislead the banking regulators to which plaintiffs, by their failure to put the representations in the Stock Purchase Agreement, lent themselves. Therefore, the Court finds that the *D'Oench* doctrine, 12 U.S.C. section

1821(d)(9)(A) and 12 U.S.C. section 1823(e) bar all of plaintiffs' affirmative causes of action, for common law fraud, negligent misrepresentation, and state and federal securities law fraud, against FDIC–Receiver.

IT IS SO ORDERED.