**Bruce G. MURPHY, pro se, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., as Receiver for Southeast Bank, Defendant.**

**Civ. A. No. 92–1924 (CRR).**

United States District Court, District of Columbia.

Aug. 10, 1993.

**4**

Bruce G. Murphy, pro se.

Brendan Collins, Atty., U.S. Dept. of Justice, Civil Div., Washington, DC, together with Stuart E. Schiffer, Acting Asst. Atty. Gen., J. Ramsey Johnson, U.S. Atty. District of Columbia, John O. Birch, Asst. U.S. Atty., and J. Christopher Kohn, and Robert M. Hollis, U.S. Dept. of Justice, Civil Div., Washington, DC, for defendant.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The above-captioned case is before the Court on the Plaintiff's Motion for Summary Judgment on Counts I and II, the Defendant's Motion to Dismiss the entire action, and the Defendant's Motion to Stay Discovery Pending Resolution of its Motion to Dismiss. After careful review of the above motions, the oppositions and replies thereto, and the applicable law, the Court shall grant Summary Judgment for the Defendant.[1]

### I. BACKGROUND

The Plaintiff, Bruce Murphy, was a limited partner in Orchid Island Associates Limited Partnership ("Orchid"), a real estate developer financed by Southeast Bank, N.A. ("Southeast"). Southeast loaned Orchid approximately $50 million between 1988 and 1990.

According to the Complaint, Orchid was the developer of the Orchid Island Golf and Beach Club project near Vero Beach, Florida ("the Project"). In 1989, the Plaintiff invested $515,672.37 to become a limited partner in Orchid. When sales revenues slowed, a plan was devised whereby Orchid would hold a public bond offering to raise funds. Orchid was to take a "bridge" loan from Southeast, and other Orchid principals would take additional loans from Southeast, to carry the project until the bond offering was complete. The proceeds from the bond offering were intended to repay the bridge loan and decrease Orchid's outstanding debt with Southeast. When the participants learned that the bond financing would result in a lien on the project superior to theirs, they rejected the bond offering and the deal fell through. Orchid's financial position subsequently worsened, and Southeast placed Orchid in default on its loans and foreclosed on the Orchid mortgages.

The Plaintiff contends that Southeast, by its actions in connection with the Project, was a partner with Orchid and exercised control over the Project and the actions of Orchid. The Plaintiff contends that Southeast's actions resulted in harm to the Plaintiff's financial interest in the Project. On September 19, 1991, Southeast was declared insolvent and subject to Federal Deposit Insurance Corporation ("FDIC") receivership. On December 16, 1991, the Plaintiff filed a proof of claim with the FDIC for $602,031.54, an amount comprised of the initial investment, expenses, and attorney fees. On June 23, 1992, the FDIC disallowed the Plaintiff's claim stating that the FDIC was not liable for any alleged damages. The FDIC declined to grant an administrative hearing to review this determination. On August 20, 1992, the Plaintiff brought suit in this Court

---

1. Because the Defendant's Motion to Dismiss relies on matters outside the pleadings, the Court shall treat the Motion as one for Summary Judgment. See Fed.R.Civ.P. 12(c).

against the FDIC as receiver for Southeast. The Plaintiff's Complaint alleges breach of fiduciary duties, breach of contract, accounting deficiencies, fraud, negligent misrepresentation, and an unlawful offer to sell securities.

The FDIC has moved to dismiss Counts III through IX of the Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the doctrine of *D'Oench, Duhme & Company v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e) bar these claims. More specifically, FDIC argues that the Plaintiff cannot sue Southeast under a joint venture theory, because all written documentation on the relationship between Orchid and Southeast explicitly rejects a joint venture relationship. The FDIC has also moved to dismiss the remaining Counts I and II, arguing that under 12 U.S.C. § 1821(d)(7)(A), the FDIC has discretion to determine when to establish administrative procedures to review claims, and that even if the FDIC is obligated to establish such procedures, they have discretion to determine which individual claimants are entitled to review. After careful review of the entire record in this action and the applicable law, the Court concludes that there are no material issues of fact in dispute that would preclude the entry of summary judgment for the Defendant.[2]

**II. *THE COURT SHALL GRANT SUMMARY JUDGMENT FOR THE DEFENDANT ON COUNTS V THROUGH IX BECAUSE THE PLAINTIFF CANNOT RECOVER AGAINST THE FDIC UNDER AN ALLEGED UNWRITTEN JOINT VENTURE AGREEMENT PURSUANT TO D'OENCH, DUHME & COMPANY V. FDIC, 315 U.S. 447 (1942), AND 12 U.S.C. § 1823(e).***

■ In Counts V through IX, the Plaintiff alleges breach of fiduciary duty, breach of contract, fraudulent omissions and representations, and negligent misrepresentations by Southeast. The Court concludes that Summary Judgment must be granted for the Defendant on these five claims because the Plaintiff cannot recover against Southeast on any theory of an alleged unwritten joint venture agreement pursuant to *D'Oench,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 and 12 U.S.C. § 1823(e).

The Plaintiff claims that Southeast and Orchid were partners in an unwritten joint venture agreement in connection with the Project. The crux of the Plaintiff's allegations is that Southeast acted in concert with Orchid in making decisions pertaining to the Orchid development that were separate and apart from Southeast's role as a mere lender to Orchid.[3]

**2.** Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). It is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). A factual dispute must be material in order to preclude summary judgment; that is, it must be a dispute that may affect the outcome of the suit under the governing law. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

**3.** For example, in Count V, the Plaintiff alleges that Southeast breached a fiduciary duty to the Plaintiff by failing to "exercise good faith, reasonable business judgment, and integrity in handling partnership affairs." Compl. at ¶ 40. In addition, in Count VI, the Plaintiff alleges that Orchid and Southeast were parties to an investment agreement with the Plaintiff in August, 1989, whereby the Plaintiff was to be paid an annual monetary sum. The Plaintiff further al-

leges breach of this contract by Southeast. *See* Compl. at ¶ 43. In Count VII, the Plaintiff alleges that Orchid breached its duty under the April 30, 1989 Accounting of the Second and Restated Limited Partnership, whereby Orchid was to furnish to each limited partner an annual audit report, a quarterly unaudited report, and an annual copy of the 1065 k–1 form. The Plaintiff seeks these documents for 1990 and 1991. However, this Count only refers to Orchid in connection with these reports and thus fails to state a claim against Southeast, and therefore the FDIC, for breach fiduciary duty to provide these reports to the Plaintiff.

Finally, in Count VIII and IX, the Plaintiff alleges that Southeast's failure to inform Orchid of the requirement that the participants approve the proposed bond offering constituted fraudulent omissions and representations and negligent misrepresentations. *See* Compl. at ¶ 47–50. The Plaintiff alleges that these omissions and representations induced Orchid to take an additional loan and expend other resources in anticipation of the bond offering.

However, such a claim is not cognizable under the law absent a written document. A party cannot rely on unrecorded agreements with a bank as the basis for claims or defenses against the FDIC. *D'Oench,* 315 U.S. 447, 62 S.Ct. 676; *Bowen v. FDIC,* 915 F.2d 1013 (5th Cir.1990); *see also Franklin Asaph Ltd. v. FDIC,* 794 F.Supp. 402 (D.D.C.1992). Under *D'Oench,* transactions that do not appear on the bank's books are not cognizable in a court of law. *Bowen,* 915 F.2d at 1016. The policy underlying the *D'Oench* doctrine is "to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets [and liabilities] in the portfolios of the banks which [the FDIC] insures." *D'Oench* 315 U.S. at 457, 62 S.Ct. at 679. While the original *D'Oench* case involved a party attempting to use an oral promise as a defense to a suit on a note issued by the FDIC, the modern *D'Oench* doctrine also applies when the FDIC is acting in its capacity as receiver, as is the case here. *See Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway,* 894 F.2d 750, 753 (5th Cir.1990), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *see also Bowen,* 915 F.2d at 1015.

In this case, there are no documents establishing the existence of a joint venture between Orchid and Southeast. Furthermore, the loan agreements here explicitly reject a joint venture between Southeast and Orchid. The first three loan agreements expressly provide that "[t]he Lender is a lender only and shall not be considered a shareholder, joint venturer or partner of the Borrower." [4] Furthermore, the final loan agreement on March 21, 1991, states that:

At no time did the Lender engage in or attempt to engage in or in any way involve itself in active management marketing, operation or control of the Project and has not, at any time, acted as a joint venturer in or a partner with the Debtor parties in connection with the Project. In the future,

at no time shall Lender be construed as having acted as a joint venturer in or a partner with the Debtor Parties in connection with the Project.

*See* Defendant's Motion to Dismiss at 6 (emphasis added).

■ The Plaintiff argues that his claims should not be barred because *D'Oench* only applies to a borrower of the bank who is trying to avoid an obligation. *See* Plaintiff's Opp'n at 4–5. He further contends that the *D'Oench* doctrine does not apply to certain tort claims that do not appear on the books of a failed bank. *Id.* at 3. The Court disagrees. The *D'Oench* doctrine acts as a bar where the Plaintiff is an investor, as well as when the Plaintiff is a borrower. *See In re NBW Commercial Paper Litigation,* 826 F.Supp. 1448, 1461–62 (D.D.C.1992). This is consistent with the logic of *D'Oench* which bars claims by any parties who, unlike depositors, were capable of protecting themselves through written agreements. *Id.*

Furthermore, "[t]orts and other claims which center around an unrecorded agreement are also barred, even though the plaintiff is not asserting the agreement itself explicitly against the FDIC." *In re NBW Commercial Paper Litigation,* 826 F.Supp. at 1465; *see also, FDIC v. State Bank of Virden,* 893 F.2d 139 (7th Cir.1990); *but see, Astrup v. Midwest Fed. Sav. Bank,* 886 F.2d 1057, 1059–60 (8th Cir.1989). Thus, the claims here are exactly the type of claims which are barred by *D'Oench.*

In addition, the plain language of § 1823(e) bars this kind of claim.[5] Section 1823(e) provides that:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or *as receiver of any insured depository institution, shall*

---

4. This language was contained in the August 30, 1988 loan agreement, the April 13, 1989 loan agreement, and the January 31, 1990 loan agreement.

5. This section is "essentially a codification of *D'Oench."* *Bowen,* 915 F.2d at 1015. Whether

the bar of *D'Oench* and section 1823 is coextensive has been debated, *see In re NBW Commercial Paper Litigation,* 826 F.Supp. 1448 (D.D.C.1992) however, such an inquiry is not necessary in the instant case.

*be valid against the [FDIC] unless such agreement—*

*(1) is in writing,*

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (1988) (emphasis added).

Thus, the Plaintiff's claims under the alleged joint venture theory are barred. Accordingly, the Court shall grant Summary Judgment on Counts V through IX for the Defendant.

### III. *THE COURT SHALL GRANT SUMMARY JUDGMENT FOR THE DEFENDANT ON THE SECURITIES LAW CLAIMS BECAUSE THE PLAINTIFF HAS NOT STATED ANY INDEPENDENT BASIS FOR SOUTHEAST'S LIABILITY OTHER THAN AN ALLEGED UNWRITTEN AGREEMENT.*

In Counts III and IV, the Plaintiff alleges securities law violations which he claims do not rely on a joint venture theory. In Count III the Plaintiff alleges that Orchid violated the registration requirement of the Virginia Securities Act § 13.1–507 by not registering the Orchid partnership units as securities. *See* Compl. at ¶ 35–36. Count IV alleges

that the solicitation letter used by "[Orchid], the general partners, and [Southeast]" violated the "Unlawful Offers & Sales Provisions" of the Virginia Securities Act and the Florida Securities and Investor Protection Act. *See* Compl. at ¶ 38. Because the Plaintiff cannot point to any independent basis for liability against Southeast separate and apart from an alleged unwritten agreement, the Court shall also grant Summary Judgment for the Defendant on these claims.[6]

■ The Plaintiff argues that he can establish a degree of control by Southeast over the Project sufficient to satisfy § 13.1–522(B) even if he cannot establish the joint venture theory. *See* Plaintiff's Opp'n at 5–6. However, the Plaintiff cannot establish that Southeast was a "material participant" because, as set forth above, all of the written agreements between Orchid and Southeast explicitly reject the proposition that Southeast was anything more than simply a lender to Orchid. To the extent that the Plaintiff attempts to rely on an unwritten agreement to prove these securities violations claims, they are again barred by *D'Oench.* Courts have held that *D'Oench* prohibits any claims based upon an unwritten agreement, even where the claims have been characterized as violations of securities laws. *See In re NBW Commercial Paper Litigation,* 826 F.Supp. at 1466–69; *see also* (citing *Kilpatrick v. Riddle,* 907 F.2d 1523, 1529 (5th Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991)).[7] Accordingly, the Court shall grant Summary Judgment on Count III for the Defendant.

Even assuming *arguendo,* that the Plaintiff once had a cognizable securities law claim not arising under a joint venture theory, the Plaintiff's claims would still be barred under

---

**6.** In his Complaint, the Plaintiff does not even mention Southeast in the discussion of Count III, and thus on the face of the Complaint, the Plaintiff does not state any cause of action against Southeast. Not until his Opposition to the Defendant's Motion to Dismiss, does the Plaintiff allege that Southeast is also liable for this alleged violation under Va.Code Ann. § 13.1–522(B) which makes "material participants" in an unlawful sale also liable for any violations. However, even under the theory set forth in the Plaintiff's Opposition, this claim must fail because it is still barred by *D'Oench* and § 1823(e).

**7.** A claim for securities violations against the FDIC is cognizable when the act being sued on has no connection to an unwritten agreement but rather involves an independent basis for liability. *See In re NBW Commercial Paper Litigation,* 826 F.Supp. at 1467–68 (Claim for an unlawful sale of securities in violation of the Securities Act of 1933 not barred by *D'Oench* ). However, no such independent basis for liability exists in this case.

§ 13.1–522(D) which provides that "[n]o suit shall be maintained to enforce any liability created under this section [including § 13.1–502 and § 13.1–507] unless brought within two years after the transaction upon which it is based." Here the Plaintiff invested in Orchid in August of 1989. *See* Compl. at ¶ 19. However, the Plaintiff did not file the current action until August 20, 1992. *See* Compl. at 1. Thus, the Plaintiff's securities claims are barred under the plain language of the Virginia statute.

## IV. THE COURT SHALL GRANT SUMMARY JUDGMENT FOR THE DEFENDANT ON THE ADMINISTRATIVE CLAIMS BECAUSE, UNDER THE PLAIN LANGUAGE OF THE STATUTE, THE FDIC HAS DISCRETION IN DETERMINING WHETHER TO ESTABLISH PROCEDURES TO REVIEW CLAIMS.

The Plaintiff also seeks declaratory relief and mandamus alleging that the FDIC did not provide the Plaintiff with an administrative hearing or other alternative dispute resolution procedure pursuant to 12 U.S.C. § 1821(d)(7)(A) or 12 U.S.C. § 1821(d)(7)(B) to review the denial his claim. The Court finds however, that the FDIC has discretion in determining whether to establish review procedures, and thus the Court shall grant Summary Judgment for the Defendant on these claims.

The plain language of section 1821(d)(4) provides that the FDIC "*may* prescribe regulations ... providing for administrative determination of claims and review of such determination." (emphasis added). More specifically, an administrative hearing may be provided "if any claimant requests review ... *and the [FDIC] agrees to such request* ...." 12 U.S.C. § 1821(d)(7)(A) (emphasis added). Finally, the FDIC may provide other review procedures "as may be appropriate." 12 U.S.C. § 1821(d)(7)(B)(i). These provisions grant the FDIC discretion in determining whether to establish procedures to review claims. Furthermore, courts interpreting these sections have held similarly. *See FDIC v. Hanson*, 799 F.Supp. 954, 958 (D.Minn.1992) (FDIC has no obligation under § 1821(d)(4) to establish administrative procedures for the review of its denial of a claim); *see also, Mansolillo v. FDIC*, 804 F.Supp. 426, 430 (D.R.I.1992). Finally, even assuming *arguendo*, that the FDIC was required to establish such procedures, the statute still provides the FDIC with discretion to determine which particular claimants are entitled to review. *See* § 1821(d)(7)(A). Thus, because the Plaintiff is not entitled to an administrative review of his claim, the Court shall grant Summary Judgment on Counts I and II for the Defendant.

## V. CONCLUSION

For all the reasons stated above, the Court concludes that the Plaintiff's claims are barred by the doctrine of *D'Oench, Duhme & Company v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e). Accordingly, the Court shall grant Summary Judgment for the Defendant. Furthermore, the Court shall deny the Defendant's Motion to Stay Discovery Pending Resolution of its Motion to Dismiss as moot. The Court shall enter an Order of even date herewith in accordance with this Memorandum Opinion.

## ORDER

Upon consideration of the Plaintiff's Motion for Summary Judgment, the Defendant's Motion to Dismiss, and the Defendant's Motion to Stay Discovery Pending Resolution of its Motion to Dismiss, the oppositions and replies thereto, the arguments of counsel, the record herein, the applicable law, and for the reasons articulated in this Court's Memorandum Opinion of even date herewith, it is, by the Court, this 10th day of August, 1993,

ORDERED that the Plaintiff's Partial Motion for Summary Judgment on Counts I and II shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Defendant's Motion for Summary Judgment on Counts I through IX shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Defendant's Motion to Stay Discovery Pending

Resolution of its Motion to Dismiss is DE-NIED as moot; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DIS-MISSED from the dockets of this Court.