**BARCLAY RECEIVABLES CO., Plaintiff–Appellee,**

v.

**MOUNTAIN MAJESTY, Ltd.; James R. Martin, Jr.; and Don Wedmore, Defendants–Appellants.**

No. 94CA0053.

Colorado Court of Appeals, Div. II.

Feb. 9, 1995.

As Modified on Denial of Rehearing March 9, 1995.

Certiorari Denied Aug. 28, 1995.

**38**

Charles B. Darrah & Associates, David N. Franklin, Denver, for plaintiff-appellee.

Greengard Senter Goldfarb & Rice, Scott Gelman, Denver, for defendants-appellants.

Opinion by Judge ROY.

In this action to recover on a promissory note, defendants, Mountain Majesty, Ltd., James R. Martin, Jr., and Don W. Wedmore, appeal the summary judgment entered in favor of plaintiff, Barclay Receivables Company. We affirm.

In 1983, defendants jointly executed a promissory note and a deed of trust in favor of a subsidiary of Nile Valley Federal Sav-ings and Loan Association (Nile Valley) which were later assigned to Nile Valley. The deed of trust was junior to a deed of trust in favor of another financial institution which secured a substantially larger obligation.

In January 1987, the defendants jointly executed an extension agreement with Nile Valley extending the note (extension agreement), and subsequently attempted to refinance the first deed of trust. The contemplated refinancing of the first deed of trust was conditioned on Nile Valley modifying its financing by reducing the interest rate for a limited period (modification agreement). The defendants assert that Nile Valley officials orally agreed to the modification agreement which is evidenced by several documents maintained by Nile Valley and in the record. Defendants subsequently defaulted on both notes and the property was foreclosed upon by the holder of the first deed of trust.

At the time the defendants were attempting to renegotiate the terms of the notes and deeds of trust, Nile Valley was in receivership under supervision of the Federal Home Land Bank Board and was ultimately taken over by the Resolution Trust Corporation (RTC). RTC, acting in its capacity as receiver, sold the interest of Nile Valley at issue here to the plaintiff as part of a bulk transaction.

Plaintiff filed this suit seeking enforcement of the promissory note in favor of Nile Valley. Defendants asserted numerous defenses including deficiencies in the endorsements and that plaintiff was not a "holder" who could obtain enforcement of the note. Defendants also asserted counterclaims for breach of the modification agreement and negligence in its implementation.

The trial court entered summary judgment in favor of plaintiff and against the defendants, jointly and severally, in the amount of $603,887.66. From this judgment, defendants appeal.

## I.

Defendants assert that the trial court erred when it concluded on summary judg-

ment that the plaintiff had standing to seek enforcement of the note. Defendants base their argument on perceived deficiencies in the endorsements of the note which deprived plaintiff of "holder" status and the fact that Nile Valley officials neither signed nor endorsed the extension agreement. We conclude that the trial court correctly determined that plaintiff had standing and could seek enforcement of the note.

### A.

Defendants jointly signed and executed the note and made it payable to a subsidiary of Nile Valley, who endorsed the note to Nile Valley, who subsequently endorsed it to the Federal Home Loan Bank of Topeka (FHLB). Thereafter, the note was endorsed by RTC to the plaintiff. There is no endorsement of the note from FHLB back to Nile Valley and from Nile Valley to RTC.

The extension agreement was signed and executed by the defendants but was not signed or ever endorsed by Nile Valley. It was endorsed by the RTC to an organization other than plaintiff and then the endorsement was amended by RTC after this suit was filed to reflect an endorsement to plaintiff.

Plaintiff attached an affidavit to its motion for summary judgment from an official of RTC which stated that: (1) the affiant had access to, knowledge of, and regularly worked with the accounts, documents, and files of Nile Valley, including the instruments at issue here; (2) RTC had reassigned the note and the deed of trust to Nile Valley in conjunction with the partial payment of indebtedness for which those documents were pledged; (3) the lack of endorsement on the note from FHLB to Nile Valley was due to administrative oversight; and (4) the amendment to the endorsement of the extension agreement was performed by an authorized representative of RTC at the request of the plaintiff to correct an error.

The trial court found that the plaintiff was the assignee of the note and the extension agreement and further found no irregularity with the assignment. We agree with the trial court.

The lack of an endorsement from FHLB to Nile Valley prevents plaintiff from being a "holder" under Colorado law. *See* §§ 4–1–201(20) & 4–3–202, C.R.S. (1992 Repl. Vol. 2); *see also* J. White & R. Summers, *Uniform Commercial Code* § 13–3 at 562 (3d ed.1988). However, an assignee of a note who is not a "holder" because the note lacks an endorsement may seek recovery if the assignee proves a valid assignment. *See Myrick v. Garcia,* 138 Colo. 298, 332 P.2d 900 (1958) (plaintiff's possession of note established a prima facie right to recover thereon); *Pay Center, Inc. v. Milton,* 632 P.2d 642 (Colo.App.1981) (transferee of note may bring suit on note despite lack of endorsement of note to transferee); *Denver–Metro Collections, Inc. v. Kleeman,* 30 Colo.App. 218, 491 P.2d 64 (1971) (transferee of note assumes the same rights as transferor even without endorsement from transferor); *see also* §§ 4–3–201 & 4–3–301, C.R.S. (1992 Repl.Vol. 2).

The United States Court of Appeals for the Fifth Circuit has held that the lack of an endorsement between supervised financial institutions did not prevent the enforcement of a note by an assignee who had acquired the note pursuant to a supervised transfer of assets, even though the assignee did not qualify as a "holder" under Texas law. *See State Savings & Loan Ass'n v. Liberty Trust Co.,* 863 F.2d 423 (5th Cir. 1989). In *State Savings,* the assignee financial institution proved ownership through the testimony of its vice-president who stated that it was the successor in interest to the assignee and by showing it had possession of a copy of the note.

We conclude that plaintiff's possession of the original note together with the affidavit from the RTC official sufficiently established plaintiff's standing to bring suit to enforce the note.

We likewise reject defendants' contention that the trial court erred by not striking the affidavit pursuant to C.R.C.P. 56(e) and by implicitly relying on the affidavit in its decision. The affidavit adequately established the knowledge and means of knowledge of the affiant, and defendants did not contest

the validity of the statements contained in the affidavit, nor did they provide evidence to the contrary. Accordingly, we conclude that the trial court did not err in relying on the affidavit as evidence establishing the validity of the assignment.

### B.

■ We also reject defendants' contention that summary judgment was improperly granted because the extension agreement contained a variable interest rate provision and the rate was not discernable from the face of the document. Plaintiff sought enforcement pursuant to the default provisions of the note and not under the terms of the extension agreement. Therefore, the variable interest rate provision of the extension agreement was inapplicable and did not affect plaintiff's ability to bring suit on the note itself.

### II.

Defendants also contend that the trial court erred in determining that no genuine issues of material fact existed as to the applicability of 12 U.S.C. § 1823(e) (1993), and in further holding that this statute barred defendants' defenses and counterclaims. We disagree.

Section 1823(e), initially enacted by Congress in 1950, codifies the common law doctrine developed in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). As a division of this court has stated:

> [T]he *D'Oench* doctrine, now codified as 12 U.S.C. § 1823(e) ... protects federal banking authorities and their successors from all claims and defenses based upon secret or unrecorded side agreements that alter terms of facially unqualified obligations, whether or not these claims or defenses might otherwise be permitted.

*Eagle Admixtures, Ltd., v. Hannon,* 867 P.2d 111, 113 (Colo.App.1993).

In *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., supra,* the defendant contrived a scheme with his bank to deceive bank regulators by falsely inflating the value of the bank's assets. The defendant execut-

ed a note in favor of the bank to enable the bank to avoid reflecting a loss on its books from bonds that had defaulted. The bank never loaned defendant any money in consideration for the note and agreed that it would not seek payment from the defendant. This agreement was evidenced in the receipt the bank gave the defendant but was not reflected in the bank's records. Eventually, because of the bank's failing financial status, the Federal Deposit Insurance Corporation (FDIC) was required to take over the bank and sued the defendant for payment on the note. The defendant raised the agreement with the bank as a defense.

The United States Supreme Court, in determining that the FDIC could enforce the note, announced a common law rule of estoppel preventing a borrower from asserting a defense against the FDIC on the basis of secret or unrecorded side agreements. The court stated:

> The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

*D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., supra,* 315 U.S. at 460, 62 S.Ct. at 680–81, 86 L.Ed. at 963–64.

Section 1823(e) provides that any agreement which tends to diminish or defeat the interest of the RTC in any asset acquired by it as receiver of any insured depository institution shall not be valid unless the agreement:

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

In articulating the objectives of § 1823(e), the United States Supreme Court in *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340, 347 (1987), stated that:

One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets....

A second purpose of § 1823(e) is ... [to] ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.

The protection afforded by § 1823(e) and the *D'Oench* doctrine have been extended to purchasers of the assets of the depository institution, and that extension is not contested here. *See Eagle Admixtures, Ltd., v. Hannon, supra; CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90 (E.D.Va.1992).

### A.

■ Defendants first attempt to avoid the provisions of the statute by arguing that summary judgment was improper on equitable grounds, alleging that they are wholly innocent parties and did not engage in bad faith conduct or attempt to deceive Nile Valley or its creditors. In addition, defendants contend that RTC's knowledge of their defenses estops plaintiff from denying the defenses. Arguments premised on equitable principles are unavailing here.

In *Langley v. Federal Deposit Insurance Corp., supra,* the United States Supreme Court concluded that it could not engraft an equitable exception on the plain terms of § 1823(e). The court held that an agreement that satisfies § 1823(e) prevails even if the agency did not know of it and an agreement that does not satisfy § 1823(e) fails even if the agency knew. *See Reisig v. Resolution Trust Corp.,* 806 P.2d 397 (Colo.App.1991) (innocent victims acting in good faith are subject to *D'Oench* doctrine); *see also Feder-*

*al Deposit Insurance Corp. v. Payne,* 973 F.2d 403, 407 (5th Cir.1992) ("the *Langley* Court destroyed the 'wholly innocent borrower' exception...."); *Baumann v. Savers Federal Savings & Loan Ass'n,* 934 F.2d 1506 (11th Cir.1991) *cert. denied,* 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992) (complete innocence of any intentional or negligent wrongdoing is no longer a defense); *Federal Deposit Insurance Corp. v. Galloway,* 856 F.2d 112 (10th Cir.1988) (agency's knowledge of bank president's misrepresentation at the time it acquired notes did not prevent agency from asserting § 1823(e) as a bar to guarantors' defense of fraud in the inducement); *Northwest Land & Investment, Inc. v. New West Federal Savings & Loan Ass'n,* 64 Wash.App. 938, 827 P.2d 334 (1992) (oral contract cannot be enforced against the assignees of the FDIC even if the agency knew of the agreement prior to taking control).

Therefore, based on the authority set out above, and under the circumstances presented here, we agree that the trial court properly rejected the equitable defenses relied upon by defendants.

### B.

■ Next, defendants contend that various documents located in Nile Valley's files, when taken together, comprise the modification agreement and satisfy the "in writing" requirement of § 1823(e). We conclude that the documents, neither separately nor collectively, evidence a final agreement with regard to the modification of the terms and conditions of the note and deed of trust in favor of Nile Valley. While there is written evidence that the Board of Directors of Nile Valley approved a modification agreement subject to regulatory approval, and that regulatory approval was given subject to establishing a specific reserve for capitalized interest, there is no evidence that the agreement was ever reduced to writing or executed by Nile Valley.

Therefore, we conclude that defendants have failed to establish that the modification agreement satisfies the requirements of 12 U.S.C. § 1823(e), and thus, any defenses

based on the purported modification agreement must fail.

### C.

We also reject defendants' contention that they possess viable counterclaims which should be reinstated.

Defendants asserted counterclaims for damages against plaintiff for Nile Valley's breach of the modification agreement and for Nile Valley's negligence in implementing that agreement. We conclude that these counterclaims are also barred by § 1823(e).

Claims that are based or centrally premised on an agreement that does not satisfy the requirements of § 1823(e) are barred. *See Murphy v. Federal Deposit Insurance Corp.*, 829 F.Supp. 3 (D.D.C.1993); *cf. RSR Properties, Inc. v. Federal Deposit Insurance Corp.*, 706 F.Supp. 524 (W.D.Tex. 1989) (affirmative claims for relief for the alleged wrongful conduct by the failed bank are also barred by § 1823(e) even if they do not involve the bank's assets). The United States Court of Appeals for the Eleventh Circuit has formulated a rule that only those claims which are independent of such an agreement and do not implicate records of regular banking transactions may be asserted. *Motorcity of Jacksonville, Ltd. v. Southeast Bank*, 39 F.3d 292 (11th Cir.1994); *Vernon v. Federal Deposit Insurance Corp.*, 981 F.2d 1230 (11th Cir.1993).

In *Motorcity of Jacksonville, Ltd. v. Southeast Bank, supra*, the court addressed the extent of the "free standing tort exception" which provides that only those tort claims that clear a "relatedness hurdle" will

not be barred. Specifically, the court noted that the *D'Oench* doctrine will bar an action, regardless of whether it sounds in tort rather than contract, when the claim is "sufficiently intertwined with regular banking transactions, such that exclusion of the alleged 'secret agreement' accords with the underlying policies of *D'Oench*." Stated another way, "the *D'Oench* doctrine does not encompass those free standing torts which do not implicate the records of regular banking transactions." *Motorcity of Jacksonville, Ltd. v. Southeast Bank, supra*, at 298.

Here, defendants' counterclaims for breach of the modification agreement and negligence in its implementation are centrally premised on the very agreement we have determined does not satisfy the requirements of § 1823(e). We adopt the rationale of *Motorcity* and conclude that defendants' counterclaims are likewise barred under § 1823(e).

Finally, defendants' remaining contentions of error were either raised for the first time on appeal or otherwise lack merit, and thus, we need not address them further. *See Committee for Better Health Care v. Meyer*, 830 P.2d 884 (Colo.1992).

Judgment affirmed.

CRISWELL and BRIGGS, JJ., concur.