**COMMUNICATION SYSTEMS, INC., Plaintiff,**

v.

**IRONWOOD CORPORATION, John Nixon Wheat and Darroll Crawford, Defendants.**

**Civil Action No. H–94–4037.**

United States District Court, S.D. Texas, Houston Division.

Jan. 31, 1996.

---

James Haralson Pearson, Pearson & Pearson, Houston, TX, for Communication Systems, Inc.

Grant Cook, Keck Mahin & Cate, Houston, TX, for Ironwood Corporation, John Nixon Wheat, and Darroll Crawford.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. # 11) and Plaintiff's Motion for Summary Judgment (Doc. # 29). For the reasons stated below, Defendant's Motion is GRANTED.

### I. Factual Background

The facts in this case are not in dispute.[1] On June 28, 1985, Ironwood Corporation ("Ironwood") executed a promissory note ("Original Note") payable to First National Bank of Atascocita ("First National Bank") in the principal amount of $150,000.00. Defendants' Motion for Summary Judgment ("Defendants' Motion"), Exh. A. On December 27, 1985, the Original Note was extended by a document entitled "Extension of Real Estate Note and Lien" ("Extension Note"). Defendants' Motion, Exh. B. Final maturity of the Extension Note was December 27, 1988. On June 28, 1985, John Nixon Wheat, Ironwood's president, and Darroll Crawford, Ironwood's C.E.O., executed guaranty agreements which guaranteed payment of the Original Note to First National Bank. Defendants' Motion, Exhs. C and D. The Original Note and the Extension Note were secured by a Deed of Trust covering an undivided forty acres of land in Liberty County, Texas. Defendants' Motion, Exh. E. Beginning October 27, 1987, Defendants de-

---

1. Plaintiff incorporates Defendants' exhibits A, B, C, D and K, but disputes the admissibility of two "demand" letters sent to Defendants by First National Bank's outside counsel in 1988. *See* discussion of the *D'Oench Duhme* doctrine and 12 U.S.C. § 1823 *infra,* at 6. However, the parties have stipulated that the letters are among the documents in Plaintiff's possession, that they were given to Plaintiff by the Federal Deposit Insurance Corporation ("FDIC"), and that the FDIC represented to Plaintiff that the letters were previously held by First National Bank. Third Supplement to Defendants' Motion for Summary Judgment ("Third Supplement"), Exh. 3. Therefore, there is no dispute that the letters were sent to Defendants and that copies were maintained in the Bank's files.

faulted on the monthly payments of the Extension Note and Guaranties. Defendant's Motion, Exh. F. On January 18, 1988, Ironwood forfeited its corporate status. *Id.*

On March 9, 1988, First National Bank sent a letter to Defendants reciting the default in monthly payments and indicating that, if Defendants did not make arrangements to bring their loan current within ten days, the Bank would be forced to make demand for payment.[2] Defendants' Motion, Exh. H. Apparently, Defendants did not respond. On March 25, 1988, First National Bank's outside counsel, Michael Carr, sent a letter to Defendants demanding immediate payment of the past due payments.[3] Carr also indicated that, if the Ironwood loan was not brought current within ten days, the entire unpaid principal balance, together with all unpaid accrued interest, would be accelerated and due and payable in full. Defendants' Motion, Exh. I. Once again, Defendants failed to respond and, on April 21, 1988, Carr sent Defendants a second letter in which the Bank accelerated all indebtedness on the Note and Guaranties.[4] This letter also constituted formal notice of the Bank's intent to foreclose upon the underlying property secured by the Deed of Trust.

**2.** The Original Note contains a standard acceleration clause which provides that, should certain events occur, including the Borrower's failure to pay any principal, interest or fees when due, the holder of the note may declare that the Borrower's indebtedness "shall forthwith become due and payable together with accrued interest thereon without further notice of any kind to the Borrower." Defendants Motion, Exh. A, at 2.

**3.** Sheryl McKellar, the bank officer who sent Defendants the March 9, 1988 letter, was copied on this letter.

**4.** Joe C. Dennan, III, of First National Bank, was copied on this letter.

**5.** Section 1821(d)(14) provides as follows:

(A) In general.
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6–year period beginning on the date the claim accrues; or

On September 1, 1988, the Federal Deposit Insurance Corporation ("FDIC") placed First National Bank in receivership. Defendants' Motion, Exh. K.

Plaintiff purchased the Original Note and Extension Note from the FDIC on February 7, 1994. On November 29, 1994, Plaintiff filed suit for the amounts due under the Notes ($124,704.53) and for foreclosure of the Deed of Trust and an order of sale.

## II. *Discussion*

Plaintiff's claim is governed by Section 1821(d)(14) of the Federal Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). This section provides that the six-year statute of limitations on a contract claim does not begin to run until (i) the date of the appointment of the FDIC as conservator or receiver or (ii) the date that the cause of action accrued, whichever is later.[5] While there is no dispute that the FDIC was appointed receiver on September 1, 1988, more than six years before this action was filed, the parties disagree over precisely when Plaintiff's cause of action accrued and, consequently, whether the action is time-barred.

 Defendants contend that Plaintiff's claim[6] accrued on April 21, 1988, when First

(II) the period applicable under State law;
 * * * * * *
(B) Determination of the date on which a claim accrues.
For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
(i) the date of the appointment of the [FDIC], as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14).

**6.** A private assignee who receives assets from the FDIC also receives the benefits of FIRREA's six-year statute of limitations. *F.D.I.C. v. Bledsoe,* 989 F.2d 805, 810 (5th Cir.1993). Similarly, since "defenses such as the statute of limitations ... may be interposed against the assignee if they were available against the assignor," *id., quoting* 6 AM.JUR.2d *Assignments* § 102 (1963), Defendant may assert the federal statute of limitations against Plaintiff as an assignee of the FDIC. *See* Plaintiff's Original Complaint, ¶ 15 ("[u]nder the Bill of Sale, the FDIC assigned all right, title and interest in and to the Note and Extension to Communications Systems, Inc., its successors and assignees").

National Bank accelerated the Extension Note. Under Texas law, "[i]f the note provides that upon default of an installment the holder may accelerate maturity of the note and declare the entire principal due, limitations will begin to run from exercise of the option." *Shepler v. Kubena,* 563 S.W.2d 382 (Tex.Civ.App.—Austin 1978, no writ), *citing Curtis v. Speck,* 130 S.W.2d 348, 351 (Tex. Civ.App.—Galveston 1939, writ ref'd). Defendants argue that, because the Original Note contained an acceleration clause, the six-year limitations period began to run from the date of its exercise by First National Bank and, therefore, more than six years had passed when Plaintiff filed suit on November 29, 1988.

Plaintiff agrees that it did not file suit within six years of the appointment of the FDIC as receiver for First National Bank. However, Plaintiff argues that its cause of action accrued not on April 21, 1988, as Defendants contend, but on December 27, 1988, the maturity date of the Extension Note.[7] According to Plaintiff, this is the later of the two dates under Section 1821(d)(14) and, because suit was brought within six years of that date, Plaintiff argues, its claim is not time-barred. Plaintiff concedes that Defendants defaulted on their monthly loan payments. Plaintiff's Original Complaint, ¶ 11 ("Defendants failed to pay the amounts due and owing in accordance with the terms of the Note and Guaranties"). However, Plaintiff contends that its claim did not accrue until the Extension Note matured, because it contests the admissibility of Defendants' summary judgment evidence, particularly the April 21, 1988 demand letter that accelerated Defendants' debt, under the *D'Oench Duhme* doctrine and 12 U.S.C. § 1823(e).[8]

"The D'Oench Duhme doctrine is a common law rule of estoppel that precludes a borrower from asserting against the FDIC defenses based on secret or unrecorded 'agreements' that alter the terms of the obligation." *F.D.I.C. v. Payne,* 973 F.2d 403, 405 (5th Cir.1992). In *D'Oench Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that "secret agreements" cannot be raised as a defense against the FDIC when it seeks to enforce a failed bank's promissory note. "Courts and Congress have built on the Supreme Court's controversial decision in *D'Oench Duhme & Co.* ... to develop the body of law that now instructs that one who has dealt with a failed FDIC-insured institution may not assert a claim or defense against the FDIC that depends on some understanding that is not reflected in the insolvent bank's records." *Texas Refrigeration Supply v. F.D.I.C.,* 953 F.2d 975, 978–79 (5th Cir.1992) (citations omitted). "Section 1823(e), the statutory result of *D'Oench Duhme* and its progeny, specifically directs that agreements with failed banks are unenforceable against the FDIC unless they meet four formal non-secrecy requirements." *Id.* at 979.[9] "[A]ssignees of the FDIC also enjoy

---

7. The Extension Note states that "[a]ll unpaid principal and interest of this loan is payable in full on or before December 27, 1988." Defendant's Motion, Exh. B, at 3.

8. The April 21, 1988 demand letter contains the following language:

> The undersigned attorney represents the interest of First National Bank of Atascocita (the "Bank") regarding payment of the [Extension Note]. Further to my letter to you of March 25, 1988, as yet, my client has not received any payments on [the Extension Note]. Accordingly, the entire unpaid principal balance of your note, together with accrued interest, is now due and payable. Demand for immediate payment of such sum is hereby made. My records reflect an approximate payoff balance of $130,-978.68 as of March 27, 1988.

Defendants' Motion, Exh. J ("April 21, 1988 Letter from M.R. Carr"), at 1. The Notice of Substitute Trustee's Sale dated April 21, 1988 also indicates that "default has occurred in the payment of [Ironwood's] indebtedness and the same is now wholly due." Defendants' Response, Exh. J ("Notice of Sale"), at 1. This notice was attached to the April 21, 1988 Letter to Defendants.

9. 12 U.S.C. § 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
> (1) is in writing,
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

protection from claims or defenses based upon unrecorded side agreements." *Bell & Murphy and Assoc., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir. 1990), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

Plaintiff argues that, although the demand letters were located in the FDIC files, thereby satisfying the first requirement under Section 1823(e), the statutory criteria have not been fully satisfied and, therefore, the demand letters are inadmissible to establish a claim against the FDIC. Plaintiff contends that there is no evidence (i) that the demand letters were "executed by [First National Bank] and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by [First National Bank]," as required by Section 1823(e)(2); (ii) that the demand letters were "approved by the board of directors of [First National Bank] or its loan committee, which approval shall be reflected in the minutes of said board or committee," as required by Section 1823(e)(3); [10] or (iii) that the demand letters have been "continuously, from the time of [their] execution, an official record of [First National Bank]. Because these criteria have not been satisfied, Plaintiff argues, the demand letters are inadmissible, and Defendants' summary judgment motion must be denied.

The Court agrees that Defendants' summary judgment evidence does not fully satisfy the statutory criteria set forth in Section 1823(e). This is not dispositive, however, because the Court finds that Section 1823(e) is inapplicable to the facts of this case.

 While courts have adopted a broad construction of the term "agreement" in Section 1823(e), *see Langley v. F.D.I.C.,* 484 U.S. 86, 90–93, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987), " 'neither section 1823(e) nor the *D'Oench Duhme* doctrine prevents plaintiffs from asserting claims or defenses that *do not*

depend on agreements.' " *Texas Refrigeration Supply,* 953 F.2d at 981, *quoting Garrett v. Commonwealth Mortg. Corp. of America,* 938 F.2d 591, 595 (5th Cir.1991) (emphasis supplied). As the Fifth Circuit held in *Texas Refrigeration Supply,* an acceleration clause in a promissory note is simply not an improper side "agreement" within the meaning of *D'Oench Duhme:*

> Obligations about timely acceleration and the disposal of collateral are implicit in every promissory note. These covenants are inferred in every such loan agreement.... And because they are an integral element of relationship between every borrower and lender, *they cannot be said to be secret or unwritten in the D'Oench, Duhme sense.*

*Texas Refrigeration Supply,* 953 F.2d at 981. (citations omitted) (emphasis supplied).

The Court is unpersuaded by Plaintiff's attempts to distinguish *Texas Refrigeration Supply.* While the Fifth Circuit addressed the issue of wrongful acceleration, its holding in *Texas Refrigeration Supply* is not limited to promissory notes that have been wrongfully accelerated. Therefore, the Court finds that *Texas Refrigeration Supply* controls the outcome in the case at bar.

The Court's findings are bolstered by the language of Section 1823(e) which, on its face, is inapplicable to acceleration of a promissory note. Section 1823(e)(2) provides that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement ... was executed by the depository institution ... contemporaneously with the acquisition of the asset by the depository institution." In the case at bar, the "asset" acquired by the FDIC is the Original Note, and the "agreement against interest," according to Plaintiff, is First National Bank's decision to acceler-

---

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been continuously, from the time of its execution, an official record of the depository institution.

10. The board minutes for April, May and June of 1988, the months when, according to Defendants, First National's Board most logically would have discussed the demand letters written in March and April, were not located by the FDIC. Third Supplement, Exh. 3.

ate Defendants' debt (embodied in the April 21, 1988 demand letter). This argument falls by its own weight. The decision to accelerate a loan cannot be executed contemporaneously with the acquisition of a promissory note because, by definition, acceleration occurs only in the future, if at all.[11]

Defendants make several additional arguments as to the inapplicability of the *D'Oench Duhme* doctrine and Section 1823(e). Each is unpersuasive, particularly in light of the authorities on which the Court relies, and they will not be separately addressed.

## III. *Conclusion*

Because the obligation arising from acceleration of the maturity date of the Original Note was not "secret or unwritten in the *D'Oench Duhme* sense," that doctrine does not preclude Defendants from introducing evidence of acceleration that does not comply fully with Section 1823(e). Therefore, the Court finds that Defendants have submitted competent summary judgment evidence that (i) First National Bank accelerated Defendants' indebtedness on April 21, 1988, (ii) the Bank authorized the acceleration, and (iii) the Bank's files included copies of the demand letters sent to Defendants by Michael Carr, as well as the Original Note, which explicitly provides that the loan may be accelerated. Based upon the presence of these documents in the bank loan file, the FDIC knew or should have known that First National Bank accelerated Defendants' indebtedness on April 21, 1988. Therefore, the limitations period ran against the FDIC on September 1, 1994, six years after the FDIC was appointed receiver and the later of the two dates under Section 1823(d)(14). *See supra,* at 3–4.

Because this action was not filed until November 29, 1994, Plaintiff's claim is time-barred under federal law. It is therefore

ORDERED that Defendants' summary judgment motion is **GRANTED**. It is further

ORDERED that Plaintiff's case is **DISMISSED**.

---

11. Typically, a borrower executes a promissory note when borrowing funds from a bank, and the bank acquires an asset in the form of a promise to pay. If the borrower complies with the terms of the note, the lender will not accelerate the loan. However, if the borrower defaults on scheduled payments, the lender has the option to demand immediate repayment in full. Thus, First National Bank could not have accelerated Defendants' debt contemporaneously with acquisition of Defendant's Original Note.